## FOSSLER v. BLAIR.
### Civ. No. 127.

United States District Court
S. D. Florida, Ocala Division.
May 17, 1950.

See also 90 F.Supp. 577.

Maguire, Voorhis & Wells, Orlando, Fla., J. R. Wells, Orlando, Fla., for plaintiff.

Truman G. Futch, Jr., Leesburg, Fla., for defendant.

DE VANE, District Judge.

Plaintiff brings this suit to recover damages allegedly received in an automobile accident February 28, 1947. Plaintiff charges defendant with the negligent operation of his automobile which caused the accident. Defendant denies negligence on his part and charges contributory negligence on the part of ·plaintiff's husband with whom she was riding at the time of the accident. The case was tried to the court without a jury, a jury being waived by all parties at the time case was called for trial.

The evidence shows the accident occurred around noon on a rainy day and that it was raining at the time of the accident. Evidence also shows that the parties were traveling in the same direction on a well-paved highway, in the open country at a speed not exceeding thirty-five miles per hour. Defendant testified he had been following the automobile in which plaintiff was riding, at a distance of approximately one hundred feet, for two miles or more prior to the ac-

cident. Plaintiff's husband testified that when he reached a point on the road where another automobile accident had occurred he slowed his speed slightly and that defendant ran into the rear of his automobile. This testimony is confirmed by plaintiff, although she is not as positive that the automobile in which she was riding slowed down prior to the accident. Both plaintiff and her husband denied positively that they stopped their automobile at the point of the wreck of the other automobile.

Defendant's wife testified that plaintiff's husband brought the automobile in which plaintiff was riding to a stop in the highway, but defendant did not so testify. He testified that just prior to reaching the point where the automobile accident had occurred that plaintiff ran the two right wheels of his automobile off the paved surface onto the shoulder of the road and that he slowed his automobile when he brought it back onto the paved highway and that it was at this moment defendant ran into the rear of the automobile in which plaintiff was riding. Defendant said he was confused as to the intentions of plaintiff's husband and that he anticipated the other party intended to stop somewhere in the vicinity of the wreck. Defendant testified that he applied his brakes in sufficient time to stop his automobile before the collision, but for a reason not known to him his automobile skidded on into the rear of the car in which plaintiff was riding. He testified his automobile was a new one and his brakes were in good operating condition. He testified further that it would have been possible for him to have guided his car off the highway and avoided the accident, but that the road was new to him, the ditch along the side of the road was full of water and he was afraid to do so and believed that there was sufficient space between his car and that in which plaintiff was riding for him to stop before the impact.

Defendant called as a witness the State Highway Patrolman policing this section of the highway. The Patrolman testified that this part of the highway had been recently reconditioned and an improper topping placed on it for a space of approximately four hundred feet and that the accident occurred within the area where the improper topping had been placed on the highway. He testified further that prior to this accident there had been twelve automobile accidents in this area because of the topping the road was so slick an automobile could not be stopped by the application of brakes. This condition of this section of the highway was unknown to the defendant and he trusted his brakes to stop his car without an accident. Defendant's wife testified that when her husband applied the brakes to his car the wheels skidded and instead of the automobile slowing down it appeared to pick up momentum and skidded right on into the automobile in which plaintiff was riding.

Liability in this case is controlled by the "last clear chance" doctrine, which prevails in Florida. Merchants' Transp. Co. v. Daniel, 109 Fla. 496, 149 So. 401; Lindsay v. Thomas et al., 128 Fla. 293, 174 So. 418. Defendant testified that before he applied the brakes to his automobile the driver of the automobile in which plaintiff was riding had run the right wheels of said automobile off the paved portion of the road, which gave the driver of the automobile in which plaintiff was riding traction to slow down his car. Defendant could have readily done the same thing; instead he chose to stay upon the paved surface of the highway trusting he would bring his automobile to a stop before it collided with the automobile in which plaintiff was riding. The accident could have been easily avoided by defendant had he done this. His failure to do so makes his negligence in this respect the sole proximate cause of the accident.

The matter of damages suffered by plaintiff as a result of the accident is more difficult question. Plaintiff testified she was severely shaken up, suffered some contusions and was thrown across the back of the front seat of the automobile in which she was riding. She testified she had been to Leesburg, Florida, on the morning of February 28th for the purpose of making an appointment with a physician to examine her for some minor ailment, that she did not see the doctor on that visit but made an appointment with his secretary to see him on

the following morning. She testified she kept her appointment with him on the following morning, told him about the accident of the day before and requested him to disregard her minor ailment and examine and treat her for injuries received in the accident. She discussed in some detail the examination he made of her and the medicine he gave. She testified further that after three visits to his office she never went back to see him but went to Hollywood, Florida, to see another physician who had previously treated her. She testified in some detail as to the treatment the Hollywood physician prescribed for her and of her pain and suffering for months, which she attributed to the accident.

Plaintiff has suffered with a kidney ailment in 1937 which continued until 1942 before it was cured. Plaintiff testified that following the accident she suffered with the same pains she had suffered with during her kidney ailment and she believed her kidney ailment had been brought on again by the accident. She believed it so strongly, in fact, that she testified that she again began to wear a brace that had been prescribed for her during her previous kidney ailment. She continued to wear it periodically up to the date of the trial. Plaintiff further testified that for months following the accident she was not able to do any of her household duties and that she had, up until the day of the trial, been unable to resume them fully. Her testimony clearly indicates she believes so strongly that she is suffering from a kidney ailment brought on by the accident that she has been a semi-invalid ever since the day of the accident.

Plaintiff did not call as witnesses any of the physicians who treated her, but relied solely upon her own testimony and that of her husband to prove her injuries, pain and suffering. Defendant called as a witness the Leesburg physician who first treated plaintiff. The Leesburg physician testified she came to his office on February 28, 1947, that he did see her that day and made notes of the history of her ailment. She complained only of a skin dryness. He testified further when she returned to his office on March 1st she never mentioned to him that she had been in an accident the day before; that she never mentioned it to him on any of her subsequent visits and that he never treated her for injuries received in the accident. He testified as to the examination he made of her and of the things he did to relieve her ailment. He testified further that some of the tests he made would have disclosed a kidney injury had she received one in the accident. Physicians in Hollywood visited by plaintiff in April, 1947 took X-rays to ascertain and determine her condition, but the court does not have their testimony as to their diagnosis of her case.

Suit was instituted by plaintiff on August 11, 1947 and the Declaration filed in the State court on the October Rule Day. As soon as defendant had been served and employed counsel, demand was made for an examination of plaintiff by a physician selected by defendant. Dr. Duncan McEwan made the examination on December 5, 1947 at which time X-rays were made. Plaintiff was again examined by Drs. Duncan McEwan, R. L. Stevens and A. Fred Turner, Jr., on October 21, 1949. X-rays were again made. The physicians in Hollywood also made their X-rays available to Drs. McEwan, Stevens and Turner. The depositions of Drs. McEwan, Stevens and Turner were taken following the last examination of plaintiff and these physicians testified as to the condition of plaintiff, as disclosed by their examination and all the X-rays. They all testified that none of the X-rays disclosed any kidney injury whatever and that examinations made of plaintiff by them disclosed no kidney injury. However, all these X-rays disclosed a bad gall bladder condition which plaintiff had in April, 1947 and from which she is still suffering. They gave it as their opinion that she received no kidney injury in the accident and the only thing wrong with her and that has caused her pain and suffering is the gall bladder condition. Plaintiff makes no claim that the gall bladder condition resulted from the accident and the physicians testified that this condition could not have resulted from the accident.

█ As the court has found defendant's negligence in this case the sole proximate cause of the accident plaintiff is entitled to

recover at least nominal damages. The difficult question is how much, if anything, beyond nominal damages should be awarded plaintiff. Plaintiff testified she had not been under the continuous care of physicians since the accident. In fact, there is no evidence in the record that she has been under the care of any physician since April, 1947. As the record stands before the court her semiinvalid condition for the past three years, except in so far as her gall bladder trouble may have contributed to it, is entirely mental and subjective and not in any way physical by reason of the accident. Plaintiff is not entitled to recover substantial damages and the court fixes the amount of her recovery in the sum of One Thousand ($1,000.00) Dollars.

A judgment will be entered for plaintiff in conformity with this Memorandum Decision.