**NORTON et ux. v. UNITED STATES.**
Civ. No. 437–P.

United States District Court
N. D. Florida, Pensacola Division.
Feb. 6, 1953.

Yonge, Beggs & Lane, Pensacola, Fla., for plaintiffs.

George Earl Hoffman, U. S. Atty., Pensacola, Fla., Hayford O. Enwall, Asst. U. S. Atty., Gainesville, Fla., for defendant.

DE VANE, Chief Judge.

This is a suit brought by Thelma M. Norton to recover for injuries allegedly received in an automobile accident and by her husband, W. L. Norton, to recover for damages to his automobile, for monies expended and to be expended for medical, hospital and nursing expenses and for the loss of companionship and consortium of his wife, as the result of the injuries sustained by her in the accident.

There is no real issue in this case as to defendant's liability. The evidence shows that on October 16, 1950, Mrs. Norton was the operator of a Buick automobile headed in a southerly direction on Navy Boulevard in the community of Warrington, just outside the City of Pensacola, Florida, in Escambia County. She had stopped at a street intersection for a traffic light and while waiting for the light to change a Navy vehicle operated by an employee of the defendant crashed into the rear of the automobile operated by Mrs. Norton, knocking it forward and causing it to hit another automobile in front of it, which was also waiting for the change in the traffic light. The Navy vehicle became entangled with the automobile operated by Mrs. Norton and it was necessary to separate the two vehicles before the Norton automobile could be moved. The evidence establishes beyond any question of doubt negligence on the part of the operator of the Navy vehicle and no contributory negligence on the part of Mrs. Norton.

*Mrs. Norton's Injuries.*

As a result of the Navy vehicle crashing into the rear of the automobile driven by Mrs. Norton, her head was thrown violently and suddenly backwards, and, as a result of the collision of the automobile in which she was riding with the automobile in front of it, her head was thrown violently and

suddenly forward. Mrs. Norton never lost consciousness, but she was considerably shaken up by the accident. She received no obvious or ascertainable physical injury. She testified that as the result of the accident her neck became stiff and sore and that she began to suffer severe pain in her arms and other parts of her body, which have continued ever since. Her husband is a retired Navy employee and on October 26, 1950 she went to the Naval Hospital at the Air Base near Pensacola, Florida where she was examined and received medical advice and instructions regarding her condition. Mrs. Norton testified that she did not improve and the evidence shows that she subsequently, in January, 1951, returned to the Naval Hospital for further examination and advice. Not being satisfied with the reports given her at the Naval Hospital, on March 5, 1951 she visited the Rugeley & Blasingame Clinic and Hospital at Warton, Texas and on April 18, 1951 she visited the Ochsner Clinic at New Orleans, Louisiana where she was again examined.

Testimony bearing upon the findings as the result of each of these examinations was offered in evidence and there is, with one exception, no conflict in the testimony as to the nature of Mrs. Norton's injury or the cause of her pain and suffering since the accident. The x-rays disclose and all the physicians testified that Mrs. Norton is suffering from arthritis of the upper spine, which was already present at the time of the accident. All the physicians, save Dr. Blasingame, testified that the x-rays disclosed no evidence whatever of a vertebra fracture. Dr. Blasingame testified that the x-rays taken at his Clinic disclosed no evidence of a fracture but that one vertebra in the neck had a deposit on it that indicated there may have been a fracture.

As the result of the accident Mrs. Norton developed a serious case of neurosis and her description of her condition indicates that she also suffers arthritic pain. No physician would testify that if arthritic pain was present, and all of them testified that they believed it was, that it was or was not the direct result of the accident. They all testified that the arthritic condition in the bones of the neck prior to the accident was sufficient to cause the pain she claims now present, but, as stated above, no physician would testify that if she had not been in the accident the pain she now claims to suffer would or would not be present.

Due to her neurotic and arthritic condition Mrs. Norton has been a near invalid ever since the accident. For some time she wore a collar around her neck to hold her head in a certain position and after she abandoned the collar she began the practice of using a halter four hours a day (two hours at a time) for traction to lift the weight of her head off her neck bone. She has practically abandoned all social and household activities and duties and she testified that she is in almost constant pain.

### Mrs. Norton's Damages.

The testimony in this case presents a serious question as to the amount of damages that should be awarded Mrs. Norton. Some physicians testified that in their opinion Mrs. Norton would greatly and rapidly improve after the termination of this litigation. Others preferred not to express any opinion on the subject. Arthritis is rapidly becoming so prevalent among us that it is common knowledge that it is a painful ailment and no accident or injury is necessary to bring it on. Traumatic neurosis is not an injury for which substantial damages should be awarded. It would open too wide a field for false and fraudulent claims. It is, therefore, the opinion of the court that the amount of damages that should be awarded to Mrs. Norton should be based upon the testimony that the accident may have accelerated her arthritis and probably to a minor extent aggravated it and that she should be awarded damages for at least a part of the pain and suffering she has endured up until this date and for a reasonable time in the future.

Counsel for the parties calls the court's attention to no similar case decided by the Supreme Court of Florida and the court knows of no such case. This court has been called upon to decide two similar cases. Ready v. Pure Carbonic, Inc., D.C., 84 F. Supp. 321, was in many respects similar, except that Mrs. Ready suffered two verte-

bra fractures which incapacitated her for a substantial period of time. On the date of the trial of her case, however, she was suffering from traumatic neurosis to a much greater extent than from her injuries. The court allowed her damages for her injuries and pain and suffering which resulted from the accident, but nothing on account of her neurosis. In Fossler v. Blair, D.C., 90 F.Supp. 574, Mrs. Fossler's alleged physical injury was proven by all the medical testimony not to exist. She thought she had suffered a dislocated kidney as a result of the accident. She was shaken up in her accident even more than Mrs. Norton. At the time of the accident she was suffering with gall bladder trouble and every physician who examined her found that to be her trouble and found no injury whatever to her kidneys. Yet Mrs. Fossler became practically an invalid for almost two years in the belief that her kidney was injured in the accident and she testified she suffered pain on account of it continuously. Her neurosis became so serious that her husband had to break up housekeeping and take her to live with her sister so he could earn the necessary money to take care of the family while she was in that condition. In her case this court allowed nothing for the neurosis and only nominal damages for the shake-up she received in the accident.

In this case the court holds that $5,000 will adequately compensate Mrs. Norton for her personal injuries and her pain and suffering resulting from the accident.

### Mr. Norton's Damages.

The evidence shows that Mr. Norton's out-of-pocket expenses for hospitalization, medical treatment, etc. totalled $2,528.46. This includes the loss of his automobile which was sold as junk following the accident. He has incurred numerous other expenses in his efforts to make his wife happier and more comfortable and he has been deprived of the companionship and consortium of his wife. As to the companionship and consortium the court finds and holds that he is entitled to only partial compensation on this account for the reason that a very substantial part of the loss of this companionship and consortium of his wife was due to her neurosis. The court is of the opinion that $2,500 will adequately cover the additional amount that should be awarded Mr. Norton, bringing his total award to $5,028.46.

A Judgment will be entered in conformity with this Memorandum Decision.