JIMMY'S CAB, INC., ET AL. *v.* ISENNOCK, ETC.

[No. 179, September Term, 1960.]

*Decided April 4, 1961.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, MARBURY and SYBERT, JJ.

*Frederick J. Green, Jr.,* with whom were *Alva P. Weaver, III,* and *Lord, Whip, Coughlan & Green* on the brief, for appellants.

*Maurice J. Pressman,* with whom was *David N. Bates* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

The defendants below, Jimmy's Cab, Inc., and Herbert Arthur Brown, appealed from the judgment rendered against them in the amount of $15,000.00 in favor of Hall E. Isennock, plaintiff below, and General Accident Fire & Life Assurance Corporation, workmen's compensation carrier of the plaintiff's employer. The questions presented on this appeal are:

I. Was there legally sufficient evidence of negligence on the part of appellants to warrant the submission of this case to the jury?

II. Was appellee contributorily negligent as a matter of law?

III. Did appellee assume the risk and, therefore, become barred from recovery?

IV. Did the lower Court err in refusing appellants' motion for a mistrial when counsel for appellee stated the amount of the *ad damnum* in his opening statement to the jury?

On August 22, 1957, Herbert A. Brown, one of the appellants and an employee of the other appellant, Jimmy's Cab, Inc. (which owned and operated taxicabs in the Towson area), drove a Jimmy's taxicab to the Isennock Mobil Service Station in Towson for the purpose of having the brakes repaired.

Upon arrival at the station Brown was instructed by Hall E. Isennock, the appellee, an employee in the station (which was owned by his brother), to drive the taxicab onto the lubrication lift. Brown did so, but when upon the lift the brakes of the taxicab failed and it continued forward. Isennock realized too late what was happening and three fingers on his right hand were caught between the right front fender of the taxicab and a work bench behind the lift, seriously injuring them.

Earlier on the morning of the accident Brown had come to the station and had purchased two cans of brake fluid from the appellee for use in a taxicab, at which time Brown advised appellee that "he had brake trouble on one of the cabs", but the record does not show whether the brake fluid purchased was for the taxicab which was involved in the subsequent accident.

The Isennock station is located about a block away from the appellants' cab stand. The appellants customarily had their taxicabs serviced, repaired, etc., at this station.

Shortly after purchasing the brake fluid Brown returned

to the station driving a Jimmy's taxicab. He stopped the cab on an incline in front of the entrance to the lift and asked appellee if he could "bleed" the brakes. Isennock answered in the affirmative, instructed Brown to drive the cab onto the lift and walked in back of the lift to guide the taxicab. The lift was located in the lubrication bay of the station, which is entered by driving through an entrance wide enough to accommodate a vehicle. The lift was an "H" shaped one; a vehicle is driven on the surface of the bay over it and when the vehicle is in proper position, the lift is raised and contacts the underside of the vehicle. It was not the type which has metal runways upon which the vehicle is driven. At the rear of the lift (where, in normal course, the front wheels of the vehicle would come to rest) were two "Wheel wells", two inches deep, thirteen inches wide, and fifteen inches long. The distance from the entrance to the lubrication bay to the lift was eleven feet; the lift was approximately five feet seven inches long, and the distance from the wheel wells to the work benches to the rear thereof was also about five feet, seven inches.

Isennock accepted Brown's statement that he wanted the brakes "bled". He asked no questions as to the condition of the brakes, how they were acting, etc. He merely assumed that the brakes were "soft or spongy or both" and that "you don't have a solid pedal". Pursuant to his direction Brown moved the cab from its standing position in front of the entrance to the lift, up the incline, and over the lift. To do this Brown had to drive the taxicab eight feet to the entrance of the lubrication bay.

When Isennock arrived at his position at the rear of the lift, the taxicab was inside the lubrication bay and six to eight feet from the front of the lift. From this point until, at least, the front of the taxicab arrived at the front of the lift, appellee was motioning the taxicab to the right or left and forward. At some point, which he cannot fix exactly, appellee realized that the taxicab was coming "too fast", at which time "it didn't look like he was going to stop, that is when I departed from in front of the car." When "it dawned

on me that he was coming too fast", he "pole-vaulted" out of his position of danger but his right hand was caught between the front portion of the right front fender and the work benches to the rear of the lift.

Immediately after the accident Brown was quoted by Isennock as saying "he didn't have any brakes." Sometime thereafter Isennock saw the defective brake hose which had caused the brake failure and which had been repaired by John Mehl, another employee of the station, after this accident. Appellee described it as dry rotted and deteriorated and testified that the deterioration and dry rot would not cause the brake hose not to function as it should until it progressed to the point where it created a hole. He also testified that when a hole did appear in the brake hose, one application of the brakes would force enough of the brake fluid out so that "you wouldn't have any brake pedal."

John Mehl, the other employee present in the lubrication bay when the accident occurred, testified that after the accident Brown stated that he just couldn't stop the car. Thereafter, he checked the taxicab and found that the flexible hose on the rear axle was broken; it was quite old, deteriorated and broken where it connects with the rear axle housing. He testified that the hole in the brake hose permitted the hydraulic brake fluid to escape and that the hole itself was sufficient to cause the car not to have brakes.

The appellee testified that before the accident he knew Brown as a cab driver and also knew that he participated in making minor repairs for the Cab Company.

I        II        III

The first three questions presented are closely related and are considered together.

It has long been the settled law of this State that in considering the legal sufficiency of the evidence, before taking a case from the jury, on the questions of the defendant's primary negligence and contributory negligence of the plaintiff, the evidence and all logical and reasonable inferences deducible therefrom must be given a consideration most favorable

to the plaintiff's cause of action. *Campbell v. Jenifer,* 222 Md. 106, 110, 159 A. 2d 353; *Sears v. B. and O. Railroad,* 219 Md. 118, 148 A. 2d 366; *Sun Cab Co., Inc. v. Cialkowski,* 217 Md. 253, 142 A. 2d 587; *Baer Brothers, Inc. v. Keller,* 208 Md. 556, 119 A. 2d 410; *State v. Wooleyhan Transp. Co.,* 192 Md. 686, 65 A. 2d 321; *Dilley v. Balto. Transit Co.,* 183 Md. 557, 39 A. 2d 469.

In the instant case in considering the evidence most favorable to the appellee the record shows that Brown, one of the appellants, was not only a cab driver but also did occasional mechanical work on his employer's cabs. Prior to the accident he bought two cans of brake fluid from the gasoline station where appellee was employed, stating that he was having brake trouble with some of his employer's taxicabs. He sought information from Mehl, another employee, about bleeding brakes and said that he "wanted to try to fix them himself" because he didn't have any brakes at all, and upon payment for the brake fluid asked the appellee whether he could fix his brakes if he brought them in later, to which the appellee replied in the affirmative. Brown drove off and returned fifteen or twenty minutes later to have his brakes repaired. There was no evidence that this cab driver had inspected his braking system so as to disclose the dry-rotted and deteriorated hose in the hydraulic system which might reasonably be expected of a cab driver who also made mechanical repairs for his employer. The hand or emergency brake was not working, which fact was known to Brown but not to appellee. In the cab's condition of having neither hydraulic nor emergency brake it may well have been negligence on the part of Brown to drive the taxicab under its own power into the bay and over the lift at such a speed that its front wheels would not come to rest within the wheel wells. We find ample evidence in the record upon which the jury could conclude that the appellant Brown was guilty of primary negligence without contributory negligence on the part of the appellee.

The distinction between contributory negligence and assumption of risk is often difficult to draw. The doctrine of "assumed risk" implies intentional exposure to a known

danger, while contributory negligence bars recovery on the part of the plaintiff when his act, or omission, is concurrent with the defendant's negligence and a proximate cause of the injury. *Finkelstein v. Vulcan Rail & Constr. Co.*, 224 Md. 439, 168 A. 2d 393; *Evans v. Johns Hopkins Univ.*, 224 Md. 234, 167 A. 2d 591; *Goldman v. Johnson Motor Lines*, 192 Md. 24, 63 A. 2d 622; *Peoples Drug Stores v. Windham*, 178 Md. 172, 12 A. 2d 532.

While this question was not seriously argued by the appellants' counsel we find no merit in his contention of plaintiff's assumption of risk. The gasoline station taken as a whole does not constitute such a dangerous place as to fall within the aforesaid doctrine. Nor do we think the conduct of the appellee was such that it amounted to a voluntary exposure to a risk which he knew or had reason to know existed. The record shows that Isennock knew that the brakes were defective but not that there were no brakes at all. Moreover, the testimony of the appellee and uncontradicted, verified the fact that if a reasonable rate of speed had been maintained and if the appellant Brown had had a usable hand brake, the fact that the foot brake was not workable might have been of slight consequence in the happening of the accident.

## IV

In his opening statement counsel for the appellee stated:
"So, we filed this suit in April of 1958, and this accident happened August 22, 1957. We filed a suit here, as I have told you, and we asked in our Declaration, the suit papers that we filed, we claimed damages to the extent of twenty-five thousand dollars. Of course, when the suit was filed—"

Counsel for the appellant then moved for a mistrial on the ground that the mention of the amount sued for was improper and prejudicial. The trial Court overruled his motion but when instructing the jury gave the following supplemental instruction:

"The Court also wants to state that Opening Statements by counsel and Closing Arguments of

counsel are not evidence and cannot serve the office of evidence, but your decision in this case, both on the question of which of the parties should recover and the amount of damages in the event of the finding for the plaintiff, are to be determined by you from the consideration of all of the evidence from the stand and under the rules of the law that the Court has given you in its Charge."

This is the first time that the propriety of counsel mentioning the *ad damnum* in his opening statement or argument has come before this Court for decision. Appellants' argument against permitting counsel to mention the *ad damnum* is predicated upon the reasoning of the case of *Botta v. Brunner,* 26 N. J. 82, 138 A. 2d 713 (1958), which holds that it is improper for any argument to be made to a jury upon the matter of any mathematical calculation of pain or suffering on a per diem or similar basis. While that case dealt mainly with and condemned the per diem argument before a jury in considering damages for pain and suffering, it also disapproved any mathematical disclosure of damages claimed, such as permitting the jury to have knowledge of the *ad damnum* before the jury considers its verdict.

In recent years the disclosure of the *ad damnum* has been the subject of considerable judicial consideration and comment. See O'Connor, "Some Anti-Biotic Thoughts in an Anti-Botta World", Daily Record, February 4, 1961, where arguments pro and con are well summarized.

In considering this question it should be borne in mind that prior to the adoption of the Maryland Rules, effective January 1, 1957, it had long been the practice in many, but not all, of the courts of this State to allow the pleadings, including the declaration containing the *ad damnum* clause, to be taken by the jury to the jury room. 2 Poe, *Pleading and Practice,* Tiffany's Edition, Secs. 328, 328 A (1925); 17 Md. L. Rev. 172, Case Note *Bell v. State,* 200 Md. 223, 88 A. 2d 567 (1952). Maryland Rule 558 a provides that upon retiring for deliberation, the jury may take with them into the jury room such of the pleadings, granted prayers

or written instructions, and exhibits which have been received in evidence, as the court may deem necessary for a proper consideration of the case. The adoption of this rule was merely a restatement of the practice in this State. It substantially follows the doctrine enunciated in the *Bell* case, that it is within the sound discretion of the trial court what objects and papers may be taken by the jury into the jury room.

Whatever may be the practice in some of the other states and in some of the trial courts of this State we rest our decision upon Rule 558 a that it is within the trial court's sound discretion to permit the jury to have the declaration, including the *ad damnum*. In cases where the Court would not be disposed to allow the jury to take the declaration to the jury room, but where counsel either inadvertently or intentionally mention the *ad damnum* in the opening statement or in argument to the jury, the trial Court should be careful to instruct the jury that the opening statement and argument of counsel are not to be considered as evidence and that their verdict must be based upon the law and evidence in the case.

We think that the trial judge in this case properly instructed the jury in his supplemental charge and find no reversible error in his overruling appellants' motion for a mistrial.

*Judgment affirmed, appellants to pay the costs.*