# Richmond

## CONSTANCE C. PHILLIPS V. ERIN B. FULGHUM.

June 11, 1962.

Record No. 5433.

Present, All the Justices.

*A. Christian Compton (John G. May, Jr.; May, Garrett, Miller, Newman & Compton,* on brief), for the plaintiff in error.

*Harry L. Thompson (James M. Minor, Jr.; Minor, Thompson, Gambill, White & Smithers,* on brief), for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

Mrs. Erin B. Fulghum, hereinafter referred to as the plaintiff, while riding as a passenger in a car driven by her husband was injured when the car was struck in the rear by a car driven by Mrs. Constance C. Phillips, hereinafter referred to as the defendant. At first it was thought that Mrs. Fulghum's injuries were slight, but it turned out otherwise. In an action for damages for personal injuries sustained in the collision, Mrs. Fulghum recovered a verdict and judgment of $17,500 against Mrs. Philips. We granted the defendant a writ of error.

In her assignments of error the defendant contends that the lower court erred, (1) in denying her motion to exclude from the jury throughout the trial the amount named in the motion for judgment as the amount sued for; (2) in allowing counsel for the plaintiff to argue before the jury that they should place themselves in the position of the plaintiff and award her such amount as they would wish if in her position; (3) in refusing to set aside the verdict on the ground that it was excessive; (4) in its rulings on the instructions; and (5) in allowing counsel for the plaintiff, in their argument before the jury, to exhibit a chart listing details of the plaintiff's injuries not supported by the evidence.

The sufficiency of the evidence to sustain the liability of the defendant is not challenged. She admitted just after the collision, and on the stand, that she did not know what had happened or why she did not stop before the impact. The controversy before us involves the nature and extent of the plaintiff's injuries and certain procedural matters.

According to the plaintiff's evidence, which the jury have accepted, the impact of the collision was quite severe. The Fulghum car was struck in the rear, driven forward and caused to strike the rear of a vehicle ahead of it. The trunk, trunk lid, the grill, both bumpers, the front seat and dashboard on the Fulghum car were considerably damaged in the collision.

The plaintiff, who was riding on the right front seat, was thrown forward against the dashboard and onto the floorboards. While she complained of neck pains immediately after the impact, she did not require medical attention at the scene, nor was she taken therefrom to a hospital. She first received medical attention two days later when she consulted her family physician who referred her to an orthopedic surgeon, Dr. Edwin W. Hakala.

Dr. Hakala found that she had suffered a moderate sprain of the neck and fitted her with a "Thomas collar" immobilizing her neck. She wore this continuously for about two weeks and thereafter intermittently for about six weeks. At Dr. Hakala's office she received "traction treatments" in which her neck was stretched in a traction machine periodically for about three months.

At the time of the trial, which took place some eighteen months after the accident, Dr. Hakala testified that she had reached the maximum medical improvement and, in his opinion, would not improve further. He said that she had sustained an aggravation of pre-existing arthritis in her neck; that she would continue to have some pain and limitation of her neck movements. His opinion was that this situation would be permanent.

Because of abdominal and chest complaints, the plaintiff consulted Dr. William C. Grinnan, a specialist in internal medicine. After having hospitalized her for tests to determine the cause of these complaints, Dr. Grinnan found that she was suffering from a hiatus hernia which he described as an abnormal opening through the diaphragm separating the abdominal and chest cavities. It is characteristic of this trouble, he said, that the contents of the abdominal cavity, the esophagus, the stomach, and sometimes the intestines, will occasionally protrude through the hiatus into the chest cavity, causing pain in the chest and swelling at the waistline. In Dr. Grinnan's opinion, the severe blow which the plaintiff sustained in the accident either caused the hiatus hernia or aggravated it if it pre-existed the accident, which he thought might be a possibility.

Dr. Grinnan further testified that the hiatus hernia condition of the plaintiff was permanent unless corrected by surgery which he considered "risky" and "undesirable." He said the plaintiff must "learn to live with" the trouble by eating small, frequent meals, avoiding drinking large amounts of liquids, wearing loose-fitting garments, and elevating the head of her bed in order to keep the abdominal organs in their proper place. Such a course, he said, she must follow the rest of her life.

According to the further testimony, the plaintiff is fifty-one years of age, a housewife with children, and employed as a secretary in the office of an insurance company. She was hospitalized on two separate occasions, visited several doctors at their offices for a total of sixty times, and sustained medical and other expenses in the total amount of $2,195.84.

At the outset of the trial, before counsel for the respective parties had made their opening statements to the jury, counsel for the defendant moved the court to exclude from the jury any mention by opposing counsel of the amount sued for, which was $35,000, on the ground that such was not evidence in the case and was without probative value. This motion was overruled and the defendant excepted. Both in the opening statement and summation before the jury counsel for the plaintiff brought to the attention of the jury the amount sued for.

This ruling of the lower court is the basis of one of the main assignments of error. The argument is that the amount of damages in an action of this character is to be ascertained and fixed by the jury from the evidence admitted before them, that neither the *ad damnum* clause in the motion for judgment nor the statement of counsel as to the amount of damages sued for is a part of the evidence, and that both should be excluded from the jury.

There is a conflict of authority as to whether counsel may inform the jury of the amount of damages claimed by his client in an action for personal injuries. See 88 C. J. S., Trial § 192, p. 376; 64 C. J., Trial, § 299, pp. 280, 281; and cases there collected. It has long been the rule in Pennsylvania that counsel for the plaintiff may not bring to the attention of the jury the amount of damages sued for, for the reason that it instills in their minds impressions not founded on the evidence. *Stassun* v. *Chapin*, 324 Pa. 125, 188 A. 111; *Porter* v. *Zeuger Milk Co.*, 136 Pa. Super. 48, 7 A. 2d 77, 78. Recently the highest court of New Jersey adopted the same rule, thereby overturning an earlier holding. See *Botta* v. *Brunner*, 26 N. J. 82, 138 A. 2d 713, 725, 60 A. L. R. 2d 1331. See also, *Cooley* v. *Crispino*, 21 Conn. Supp. 150, 147 A. 2d 497, 499.

The contrary view was taken in *Williams* v. *Williams*, 87 N. H. 430, 182 A. 172, 174; *Freeman* v. *Manhattan Cab Corp.*, 1 Misc. 2d 601, 150 N. Y. S. 2d 674, 682; *Maurizi* v. *Western Coal, etc., Co.*, 321 Mo. 378, 11 S. W. 2d 268, 277.

In the recent case of *Jimmy's Cab, Inc.* v. *Isennock*, 225 Md. 1, 169 A. 2d 425, it was held that there was no error in overruling a motion

for a mistrial when the plaintiff's counsel referred to the *ad damnum* clause and the court properly instructed the jury that such statement could not be considered as evidence in the case. While the court there held that under its rule the trial court may allow the pleadings containing the *ad damnum* clause to be taken by the jury to their room, it pointed out that this rule was merely declaratory of long-established practice in many, if not all, of the courts of that state.

The precise question has not heretofore been considered by this court. But we are reminded that in the recent case of *Simmons* v. *Adams*, 202 Va. 926, 121 S. E. 2d 379, we held that the repeated reference in a number of instructions, granted at the request of the plaintiff, to the amount sued for "is likely to be misleading and prejudicial to the defendant" because, "Coming from the court itself it is likely to give the jury the impression that the amount sued for is significant and a factor to be considered in arriving at their award." Consequently, we said, the instructions should not refer to the particular sum sued for, "but by appropriate language the jury should be told that the amount of their award, if any, should not be in excess of the amount claimed or sued for." 202 Va., at page 932, 121 S. E. 2d, at pages 383, 384.

In the present case we are invited to extend the holding in the *Simmons* case and say that the reference by counsel for the plaintiff to the amount sued for by their client was likely to be misleading and prejudicial to the defendant and should not have been permitted.

We decline that invitation for two reasons: In the first place, reference to the amount sued for by counsel for the plaintiff is not likely to have the same effect upon the jury as reference thereto coming from the court itself. In the next place, it would be illogical, if not absurd, to say that the jury should be instructed that the amount of their award, if any, should not be in excess of the amount sued for and then not told what that amount is.

If counsel for the defendant feels that the rights of his client are likely to be prejudiced by the mention by opposing counsel of the amount sued for, he may ask to have the jury instructed that the mention of such amount is not evidence in the case and should not be considered by them in arriving at the amount, if any, of their award. See *Jimmy's Cab, Inc.* v. *Isennock, supra,* 225 Md. 1, 169 A. 2d 425.

The next contention of the defendant is that the lower court improperly allowed counsel for the plaintiff to argue before the jury that they should place themselves in the position of the plaintiff and award her such recovery as they would wish if in her position.

The argument of counsel for the plaintiff to which exception is taken is printed in the margin.[1] The contention is that this argument

[1] "[Mr. Thompson:] You want to take into consideration the pain and suffering she already has and the fact that both of the doctors say that until she is gone from here, twenty years from now according to the averages, she will have trouble with the injuries she got in this accident. So it is not an enviable job that you have to decide just what you are to give her. But let me stimulate your thinking on that with another illustration.

"Suppose I were an employer and I said to you, 'I am the only employer around and you have got to work for me. There is no choice. You don't have any choice whether you take this job or not. The only choice you have is as to what pay you want for the job.' And so you take the job, you must take it under the rules. All right, so you do. Then I tell you what you have to do. Here is what you have to do to earn your pay and you tell me what you want for it: First of all, I am going to sit you into an automobile and just let it be sitting still and I am going to get in my automobile and I am going to back off from you a given distance and I am going to run into you from behind, just exactly like it happened in this case. I am going to hit the car hard enough to do $700 worth of damages to it and it is going to throw you up against the dashboard hard enough to push in the glove compartment so that you can't open it.

"You are going to be a housewife, you are going to have to go home, tend to your children, tend to your job, run the house, wash the dishes, perform all of the duties of a lifetime ahead of you with a whiplash injury to the neck and a hiatus hernia that we either caused or flared up by this blow that you ran into; and you can't get rid of this job, you can't quit, you have to keep it for the rest of your life.

"First of all, to take the job it is going to cost you $2,195.84 that you have got to pay me as your employer. That is your overhead to take this job. Then every minute of your life, day in and day out for the rest of your life, you are going to have to do everything that you have to do with these injuries with your neck hurting you periodically, at the end of a day it is going to be worse, when you get tense it is going to be worse, you have got to sleep with your bed elevated, you have got to eat your meals lightly, you have got — — —

"Mr. Compton: If Your Honor please, I hesitate to interrupt counsel again, but this line of argument is entirely improper. Counsel is asking the jury to think what they would want if they were in the situation of the plaintiff, and that, as the court knows, is an improper line of argument, sir, and in the so-called 'Golden Rule' cases — — —

"The Court: I didn't understand that he was putting the jury in that place. I understood that he was giving an example of an employer or employee and placing himself — — —

"Mr. Compton: I think that is clearly the analogy.

"The Court: I don't think he put the jury in the position of the Golden Rule case. I am going to overrule it. I think the argument is proper.

"Mr. Compton: All right, sir, we respectfully note an exception to that, sir.

"Mr. Thompson: So all of the things you have to do the rest of your life, you have to be in that fix. You have to do what the doctor says, you have to elevate your bed, you have to eat light meals, eat often, not eat like you used to. Your whole pattern of life is changed. You even have to sleep in separate beds in the house, whereas formerly it was the other way around.

"This isn't a job you can quit, you have got to keep it until you die.

"Now today you have the privilege and the duty because you are the only jury she's got, of saying what that job is worth to her. That is a big burden, I know,

violates the well-settled rule that it is improper for counsel to appeal to the sympathy of the jury by asking that they put themselves in the plaintiff's place. See 53 Am. Jur., Trial, § 496, p. 401; Annotation, 70 A. L. R. 2d 937; *Lorillard Company* v. *Clay*, 127 Va. 734, 752, 104 S. E. 384, 390; *Crosswhite* v. *Barnes*, 139 Va. 471, 487, 124 S. E. 242, 40 A. L. R. 54; *Cape Charles Flying Service* v. *Nottingham*, 187 Va. 444, 455, 456, 47 S. E. 2d 540, 545, 546; *Seymour* v. *Richardson*, 194 Va. 709, 715, 75 S. E. 2d 77, 81.

In its written opinion overruling the motion to set aside the verdict the lower court held that this "argument of counsel was not intended to, and did not have the effect of, substituting the jury for the plaintiff;" that counsel "attempted to create an entirely fictitious situation by way of illustration," and that in so doing the word "You" was used in an "indefinite" or hypothetical sense and was not personally addressed to the members of the jury. Moreover, the lower court held, even if it be assumed that the argument was improper, it was not prejudicial and did not influence the jury to bring in a verdict which was excessive.

We agree with that conclusion. However, the argument was quite close to the improper borderline, could have been prejudicial, and should not have been permitted. But since it did not affect the result in the case it did not require that the verdict be set aside.

■ We also agree with the lower court that considering the nature, extent and permanency of the plaintiff's injuries, and the actual expenses and loss of wages incurred by her, the verdict was not excessive.

Upon careful consideration we find no merit in any of the defendant's assignments of error with respect to the lower court's rulings on the instructions.

■ During the closing argument before the jury counsel for the plaintiff exhibited a chart on which they had detailed the plaintiff's injuries as, they contended, were shown by the evidence. Among these the hiatus hernia was listed as a "permanent" condition. Counsel for the defendant objected to this listing and the argument that this condition was permanent, because, he said, there was no such evidence. The lower court overruled this objection, holding that under the evidence the permanency of the condition was for the jury under

but still, in all, it is one that you have to assume in just a few minutes. And when you come back and name your figure, I want you to understand, gentlemen, that there isn't any going back for more. That is it for a lifetime. So certainly you ought to be very, very careful to give her enough to make it worthwhile for a lifetime."

the instructions which had been given them. This ruling is the subject of the defendant's final assignment of error.

There is no contention that the use of the chart in illustrating the argument was improper. *Cf. Certified T.V. & Appliance Co.* v. *Harrington*, 201 Va. 109, 109 S. E. 2d 126. The sole contention is that there is no evidence to support the description of this condition of the plaintiff on the chart as permanent, and that therefore counsel for the plaintiff had no right to so argue before the jury.

We hold that this ruling of the lower court was proper. As has been said, Dr. Grinnan testified that this condition of the plaintiff was permanent unless corrected by surgery, that such an operation was risky and undesirable, and that she must learn to live with the condition. Clearly, under this evidence, it was for the jury to say whether this condition of the plaintiff was permanent.

On the whole we find no error in the rulings of the lower court and the judgment is

*Affirmed.*