James C. Crane, J.
On the trial of this personal injury action before the court without a jury, the female plaintiff claims that the defendant, its agents, servants and employees failed to exercise a reasonable degree of care commensurate with established standards and procedure prior to obtaining from said plaintiff a blood transfusion; that in failing to observe plaintiff’s anemic condition at the time of obtaining said transfusion they were careless, reckless and negligent; that defendant and its agents failed to observe during said transfusion that the plaintiff was in shock and that by carelessly, recklessly and negligently obtaining a blood transfusion from the plaintiff she was caused severe shock, pain and suffering and other injuries. Plaintiff claims said injuries were due solely and wholly to the carelessness and negligence of the defendant without any negligence on the part of the plaintiff contributing thereto. In addition thereto, plaintiff’s husband in a derivative action seeks damages for loss of services, consortium and for the expenditure of moneys for medical care, medicines and household assistance.
*800 The facts developed upon the trial show that on or about the 3rd day of December, 1957, plaintiff while an employee of the New York Telephone Company at its branch office at Broad Street, in the Borough of Manhattan, was among a group of employees of said Telephone Company who were voluntary donors of blood to the defendant, Red Cross. That prior thereto the plaintiff suffered an anemic condition and said she had advised the interrogating nurse of such condition and also told said nurse that she had been turned down once for such condition.
That while on the premises of the Telephone Company and in a room designated a donor room, certain procedures were carried out. The nurse assigned to plaintiff, preliminary to the donation of blood by the plaintiff and the transfusion, claims that certain questions about the health and medical history of the plaintiff were asked. These questions appeared on a card marked defendant’s Exhibit “ A ” in this action. In addition thereto the nurse stated that she observed that the patient was a very slight creature and that she made inquiry as to whether there was any pregnancies in the past year and that the plaintiff in reply stated to her that she had a .child. The nurse then proceeded to prick the finger of the plaintiff and extracted blood. This first extraction of blood was not used because of dilation with scrum. The nurse then proceeded to make a second pinprick extracting blood and this second extraction of blood was placed in a vial containing a solution of copper sulphate. She stated that this blood dropped all the way to the bottom of the vial which indicated to her in accordance with her training that if the drop of blood falls to the bottom of the vial that would indicate that the patient has 85% or better of hemoglobin in the blood. She explained that if the blood rises the first time another test would be made and if upon a second tost the blood rose again in the vial the donor would be rejected. She testified that,in accordance with her observation and the answers given by plaintiff, it was her opinion that the plaintiff was a fit subject as a donor. Shortly after these proceedings the plaintiff gave blood. This blood was drawn from the arm of the plaintiff through the vein into a bottle. The full contents of the bottle including the blood was 440 cubic centimeters. While the transfusion was taking place on the said 3rd day of December, 1957, the acting chief supervisor of the operation of the bloodmobile, registered nurse Margaret Pearson was present in the donor room and was circulating about the premises supervising the procedures, first, in connection with the history questions and second, the test given to determine the eligibility of the donor for a transfusion. The said supervisor did not actually partid *801 pate in the questioning or initial procedures re: the blood test. The supervisor stated that at the time plaintiff gave the transfusion she ivas approximately five to eight feet away. She said that she noticed after the needle used in the transfusion Avas removed that the plaintiff had a pallor and indicated Aveakliess and Avas perspiring. She stated that this ivas a mild reaction on the part of the plaintiff to the transfusion. She testified that the plaintiff Avas escorted to the canteen and there received coffee and appeared to recover but shortly after the coffee she noticed plaintiff’s pallor and observed her vomiting. She said that the plaintiff grew progressively Avorse, then eventually severe and suffered a syncope Avhile in the canteen. The testimony established on cross-examination of this Avitness Avas that the plaintiff became cyanosed and her condition dangerous Avith almost a nonexistent pulse resulting as per instructions of the doctor in an injection of adrenalin in the arm. After some period of time under the ministrations of the doctor and nurses and rest, the plaintiff Avas taken to her home.
Defendant’s Exhibit “A ”, the card referred to (supra), upon Aidiich Avcre a series of printed questions, Avas initialed by the nurse, Florence Spadafora, Avho conducted the aforesaid procedures, and she stated that the marks on the back thereof meant that the ansAvers given by the plaintiff Avere negative ansAvers. However, she also testified to certain questions put to the plaintiff and certain answers of the plaintiff Avhich Avere not recorded on Exhibit “A”. Observation of defendant’s Exhibit “A” by this court shows that in no specific instance is there a direct ansAver to any questions.
In view of the other questions asked and the ansAvers made by this plaintiff to the effect that she Avas anemic and that she had a child, this court verily believes that the examination and the tests made were made in a careless, indifferent and negligent manner and without regard to the condition of the plaintiff. There was present at all times during the initial tests, not only the acting supervisor but a physician in charge, who were not consulted concerning the advisability of extracting blood from an anemic Avoman who had given birth comparatively recently to a child.
This court believes that the cursory examination and procedures adopted by the Bed Cross in this case were far from being proper and were not consistent Avith good judgment and practice.
It does not appear from the record in this case that the plaintiff Avillfully concealed, deceived or failed to disclose any per *802 tinent information concerning her physical condition. The New York Telephone Company’s records, which were available to the Red Cross at the time prior to and during the transfusion, show the prior medical history of the plaintiff. No reference was made by the defendant in this case to examination of such medical history of plaintiff. This court considers it was the duty of the Red Cross to exercise reasonable care in the premises.
Therefore, under all of the facts and circumstances in this case, the court finds and decides that the defendant was guilty of negligence and that the plaintiff has sustained her cause of action by a fair preponderance of the credible evidence. The testimony establishes that the plaintiff was confined to her home under the ministrations of her own personal physician and the doctors of the Telephone Company for a period of 63 days. There is no proof in this case of loss of wages or expenditures for maintaining and operating the household. The proof shows that the plaintiff husband expended the sum of $140 for doctor’s fees and medicines.
Accordingly, for the pain, suffering and injuries sustained by this plaintiff as a result of the negligence of the defendant, its agents, servants and employees, this court awards judgment to the plaintiff, Grace M. Bowman, and against the defendant, American National Red Cross, in the sum of $2,000 and in addition thereto awards judgment to the husband, Thomas F. Bowman, against the defendant, American National Red Cross, for loss of his wife’s services and consortium and for medical fees and medicines, the sum of $500.