## NICHOLSON *v.* BLANCHETTE

[No. 274, September Term, 1964.]

*Decided June 3, 1965; per curiam filed September 16, 1965.*

The cause was argued before HAMMOND, MARBURY, SYBERT, OPPENHEIMER and BARNES, JJ.

*John L. Schroeder* for appellant.

*George G. Eggers,* with whom was *Arthur V. King* on the brief, for appellees.

BARNES, J., delivered the opinion of the Court.

The appellant, Louis S. Nicholson (defendant) was the de-

fendant below in an action at law instituted by the appellees, Sadie A. Blanchette (Sadie) and, her husband, William A. Blanchette (William), as plaintiffs below, to recover for Sadie's personal injuries (Count I of the declaration) and for William's property damage and damages suffered by him from his wife's injuries, resulting from the negligent operation of an automobile by the defendant, (Count II). The injuries occurred on June 27, 1960 when the defendant drove his automobile into the rear of an automobile owned jointly by the plaintiffs and driven by the plaintiffs' daughter, Mary Ellen Blanchette, in which Sadie was a passenger on the right front seat of that automobile. Sadie suffered severe injuries to her right shoulder, neck and arms and incurred substantial doctors' bills, hospital bills and other expenses. The damages claimed in Count I were $100,000 and in Count II, $50,000. The case was tried before Judge Moorman and a jury. The jury returned verdicts for $20,000 for Sadie and for $15,000 for William; judgments were duly entered upon those verdicts after the trial court had overruled motions for a new trial, judgment n.o.v., and for a remittitur which had been timely filed by the defendant.

The defendant, as appellant in this Court, complains of six alleged errors. They are:

1. The remarks and actions of the trial judge were prejudicial to the defendant.

2. The trial court erred in its treatment of the mention of the *ad dammum* clause in the opening statement and closing arguments on behalf of the plaintiffs.

3. The trial court erred in refusing to grant the motion of the defendant to strike out the testimony of Dr. Rizzoli.

4. The trial court erred in admitting into evidence certain hospital and doctors' bills and certain testimony allegedly not in conformance with the pleadings.

5. The trial court erred in instructing the jury.

6. The trial court erred in overruling the motion of the defendant made in accordance with Maryland Rule 243(b) and in refusing to instruct the jury to limit the damages of the plaintiffs to their motor vehicle.

We have concluded that the trial court did not commit prejudicial error and that the judgments must be affirmed. We will

consider the six points raised by the defendant in the order above set forth.

## I.

Counsel for the defendant made a motion for a mistrial because counsel for the plaintiffs during the opening statement to the jury mentioned that the plaintiffs were asking for $100,-000 damages. The record indicates that prior to this motion, counsel for the defendant had made two other motions which had been overruled by the trial court, i.e., 1) "that the plaintiffs in presenting evidence and testimony be limited strictly to the Declaration which is in the file" and 2) "that with respect to Count Two that no proof be offered with respect to claim for loss of consortium or services by the husband because none of that is mentioned in Count Two of the Declaration which sets forth the husband plaintiff's claim." Then follow the remarks of counsel for the defendant and the court:

> "Counsel: "Your Honor, I ask you to make sure that my motion is on the record. The Court has admonished me, in front of the jury, in a harsh tone, to return to the Bench and I am perfectly willing to return to the Bench but I have a right to protect my client's interest and that is what I have to do and I regret that I have to make this motion but I think I am entitled to a new trial on the previous motion, and I make another motion for a mistrial because of your admonishment of me in front of the jury, in harsh tones."

> THE COURT: "Mr. Schroeder, you made your objection. The Court called you up to the Bench and did admonish counsel for the plaintiff, in effect, to be a bit more circumspect in his argument. It was perfectly obvious to you that the Reporter was recording everything that was on your objection, as well as the motion that was over-ruled. Twice the Court over-ruled the motion. Three times you said, in a loud, impudent voice, that you wanted your objections and the rulings recorded. It was obvious that they were being recorded.

"The only reason the Court doesn't cite you for contempt is because of your obvious instability and overexcitement."

The record indicates that the remarks of the trial court, above quoted, were made at a bench conference and there is nothing to show that they were heard by the jury. The defendant has not sought to correct the record under Maryland Rule 827, so that we must assume that the record is correct. We notice that in another portion of the record at a subsequent bench conference, the trial court requested counsel to lower their voices so that the jury would not hear the colloquy between court and counsel. We must assume that these remarks were not heard by the jury. If not heard by the jury, the remarks obviously could not have prejudiced the outcome of the trial. Even if they had been heard by the jury, and the question of possible prejudice were before us, it would appear that these remarks would not constitute reversible error. Cf. *General Automobile Owners' Ass'n. v. State, use of Penn,* 154 Md. 204, 212-213, 140 A. 48 (1928).

The defendant also complains that the remarks of the trial court during rulings on evidence and motions during the course of the trial showed that the trial court indicated that he was favorable to the plaintiffs and hostile to the defendant. It is not necessary to set out these remarks in detail. There is no doubt that the trial court in this case maintained a "tight rein" on both counsel for the plaintiffs and for the defendant. The trial court's remarks in his rulings were often positive and colorful, but the whole record indicates to us that they were applied impartially to counsel for both parties and that they indicate no prejudice against, or favoritism toward, either of the parties. See *Taylor v. City of Berwyn,* 372 Ill. 124, 22 N. E. 2d 930 (1939) in which it was held that no prejudice on the part of the trial court against one of the parties was shown by the admonition by the trial court of the attorneys for both sides following heated statements that unless they conducted themselves properly, it would be necessary to fine one of them for contempt in the presence of the jury.

In any event, counsel for the defendant made no objection

on the ground of impropriety of the remarks or any prejudice to the defendant either when the remarks were made or even in the defendant's motion for a judgment n.o.v., for a new trial or for a remittitur. We do not think the defendant has preserved any point in regard to the remarks which we may consider on appeal. See Maryland Rule 885; *Tufts v. Poore,* 219 Md. 1, 15, 147 A. 2d 717 (1959).

Nor does the defendant point to any prejudice resulting to the defendant from the trial court's remarks. A review of the entire record indicates to us that there was no such prejudice.

Finally, even if we were to assume for the argument only that some of the remarks might have indicated to the jury that the trial court had an opinion in regard to certain facts, this was dispelled by the instruction of the trial court to the jury in which the trial court stated:

> "Now, during the course of this trial it has been the Court's duty, as a matter of law, to rule upon questions of evidence. Those rulings should not concern you, and I instruct you that neither by these instructions nor by any ruling that I have made do I, or have I, intended to reflect my opinion in relation to the facts. And if by these instructions, or any ruling or tone of voice, or other conduct you may have gleaned the idea that the Court had an opinion in relation to the facts, you are instructed to totally disregard them."

See *Western Maryland Dairy Corporation v. Brown,* 169 Md. 257, 181 A. 468 (1935).

## II.

In the opening argument of counsel for the plaintiffs reference was made that the plaintiffs claimed $100,000. This was the amount of the *ad damnum* clause in Count I of the declaration, setting forth the claim of Sadie. Counsel for the defendant made a timely motion to declare a mistrial which the trial court overruled. After the trial court's instructions to the jury, counsel for the defendant moved that the plaintiffs' counsel be instructed to refrain from mentioning the *ad damnum* clause

in his final argument. This motion was also denied by the trial court, and an exception was noted. In his closing argument, counsel for the plaintiffs mentioned to the jury the amount claimed in Count I ($100,000) and Count II ($50,000) and a timely objection was made and overruled by the trial court. No specific instruction on this aspect of the case was requested by the defendant. The trial court in the charge to the jury stated:

> "Now, you determine the facts, of course, from the evidence. The evidence consists of the testimony of witnesses that came to you under oath from the witness stand, and the exhibits that were introduced. The argument, statements and remarks of counsel does not constitute evidence, and any statement, remark or argument of counsel not based on the evidence should be totally disregarded by you."

Later in the charge, the trial judge instructed the jury "* * * you, the jury, should allow her such sum of money as will, *in your opinion,* be fair and just compensation for the injuries she sustained as a result of the accident," and, still later in the charge "then you may award damages which, *in your opinion,* would be fair and just compensation for the injury sustained." (Emphasis supplied).

There is a division of authority in the decisions of our sister States in regard to whether it is reversible error for counsel to mention the amount of the *ad damnum* clause or to permit the jury to have the declaration showing the amount of that clause. We passed upon this matter in *Jimmy's Cab, Inc. v. Isennock,* 225 Md. 1, 169 A. 2d 425 (1961) in which counsel for the plaintiff mentioned the amount of the *ad damnum* clause in his opening statement. The trial court in the *Isennock* case instructed the jury that opening statements and arguments of counsel were not evidence and that the jury's decisions both on the questions of recovery and of damages "are to be determined by you from the consideration of all of the evidence from the stand and under the rules of law that the Court has given you in its charge." The judgment for the plaintiff was affirmed.

Judge Marbury, for this Court, stated:

"Whatever may be the practice in some of the other states and in some of the trial courts of this State we rest our decision upon Rule 558a that it is within the trial court's sound discretion to permit the jury to have the declaration, including the *ad damnum*. In cases where the Court would not be disposed to allow the jury to take the declaration to the jury room, but where counsel either inadvertently or intentionally mention the *ad damnum* in the opening statement or in argument to the jury, the trial Court should be careful to instruct the jury that the opening statement and argument of counsel are not to be considered as evidence and that their verdict must be based upon the law and evidence in the case.

"We think that the trial judge in this case properly instructed the jury in his supplemental charge and find no reversible error in his overruling appellants' motion for a mistrial."

When one considers that the medical expenses were in excess of $9000 and that there was evidence from which the jury could find a substantial degree of permanent injury resulting from the accident, the verdicts of $20,000 for Sadie and $15,000 for William—a total of $35,000—as compared with the total of $150,000 claimed in the *ad damnum* clauses indicates that the jury was not in any way misled or influenced by the mention of the amounts in those clauses. Cf. *Harper v. Higgs,* 225 Md. 24, 40-41, 169 A. 2d 661 (1961).

The trial court's charge was sufficient to indicate to the jury that the remarks and arguments of counsel were not evidence, that the issues in the case could only be determined by evidence produced from witnesses in court and exhibits offered, and that the damages should be those which in the opinion of the jury would be fair and just compensation for the injuries resulting from the accident. If we assume, *arguendo,* that the issue is before us in view of the absence of objection to the charge, we are of the opinion that these instructions comply with our holding in *Isennock* and there is no reversible error presented on this issue.

## III.

We now come to the question of whether the trial court erred in refusing to grant the motion of the defendant to strike out the testimony of Dr. Rizzoli.

Dr. Rizzoli, a neurosurgeon, testified for the plaintiffs. Dr. Queen, Sadie's attending physician, had referred Sadie to Dr. Rizzoli for surgery to relieve the continuing severe pain from nerves connected with her cervical spine. On April 28, 1961, the operation was performed and the C6 and C7 nerve roots were decompressed. The operation was successful and Sadie received substantial relief from the prior-existing pain. In his medical report, Dr. Rizzoli had written that Sadie had told him that the accident had occurred on July 1, 1960. He testified that later he learned that this date for the accident was incorrect but he made no effort to correct the report as he "didn't think it was my job, nor did I think it was germane to my part in the treatment of this patient." Dr. Queen testified that Sadie had called him either the evening of the accident, June 27, 1960, or the following day, informing him of her injuries resulting from it. William testified that the accident occurred on June 27, 1960, that Sadie's injuries resulted from that accident and that she was not involved in any accident on July 1, 1960. Dr. Spence also testified that when he took Sadie's history, she told him that the accident occurred in June 1960.

It seems clear to us that the trial court properly declined to strike out Dr. Rizzolis' testimony, or to instruct the jury to disregard it in its entirety, but properly left the weight of his testimony to the jury.

The defendant also complains that his counsel was not furnished a copy of Dr. Rizzoli's medical reports prior to trial. There is no agreement of counsel for the plaintiffs to furnish a copy of Dr. Rizzolis' medical reports in the record. In Sadie's answer to the defendant's interrogatories she lists five physicians who had treated her for her injuries resulting from the accident, one of whom was "Hugo V. Rizzoli, M.D.—4-6-61, present, diagnosed injury neck, shoulder, right arm. Performed surgery—cervical Laminectomy with Decompression of Cervical Root." In addition, the defendant took the depositions of both

Sadie and William in both of which there was testimony in regard to Dr. Rizzoli's treatment of Sadie. The defendant did not take Dr. Rizzoli's deposition, nor did he ask for a continuance on the ground of surprise. We cannot see from the record how counsel for the defendant could have been surprised, or if so, why he failed to move for a continuance. Having failed to move for a continuance and having gone forward with the case, he waived any objection based upon surprise.

## IV.

Sadie had a history of previous illnesses not connected with the accident of June 27, 1960. In regard to the charges made by two of the physicians and by the Washington Hospital Center, certain charges were connected with treatment for conditions resulting from the previous illnesses. The amounts charged for the treatment of pre-accident conditions, however, were subtracted from the original bills containing both charges. For example, Dr. Queen originally testified that his total bill was approximately $1300, but after subtracting the charges for the treatment for unconnected conditions, he testified that the net bill for treatment resulting from the accident of June 27, 1960 was $866.00. This evidence was received without objection and we can find no prejudice to the defendant from the admission of this evidence. A similar situation occurred in connection with the hospital bill, the net amount of which was $1,026.90 according to Dr. Queen's testimony after deducting the unconnected items. There is no evidence in the record that the original bill for a higher amount was even shown to the jury. Again there was no prejudice to the defendant from this testimony. The testimony of Dr. Rizzoli giving the net amount of his bill as $2,089.93 accompanied by a withdrawal of the original bill was also not prejudicial to the defendant. The point that Dr. Rizzoli's report indicated the date of the accident as July 1, 1960 has already been disposed of in Part III of this opinion.

The claim of William in regard to drugs purchased for treatment of his wife in the amount of $248.39, and the reasonable and necessary cost of his transportation to and from physicians' offices and hospitals in a total amount of $547.50 was supported by the evidence. These damages were foresee-

able and reasonable expenses resulting from the defendant's negligence. There was no prejudice to the defendant from the trial court's rulings on this testimony.

## V.

At the first bench conference, counsel for the defendant called the trial court's attention to Count II of the declaration and moved that no proof be offered with respect to a claim for loss of consortium or services by William because none had been mentioned in the declaration. Count II of the declaration alleged, *inter alia*:

> "As a result of the negligence, recklessness and carelessness of the defendants aforesaid, and without any negligence of the plaintiff's contributing thereto, the plaintiff, William A. Blanchette, suffered damage to his automobile and suffered and continues to suffer damages because of the injuries caused his wife, the plaintiff, Sadie A. Blanchette, who has required medical care and treatment and will continue to require medical care and treatment all of which will be the expense of the said William A. Blanchette."

This motion was overruled.

In the trial court's charge to the jury, the following was stated:

> "You may consider the damages to his automobile and you may consider the loss of services, the loss of consortium of him with his wife, which includes the loss of her assistance and her society as well as the loss of sexual relations, and you will enjoy [1] him such sum of money as will, in your opinion, be fair and just compensation for the expenses and for the loss of consortium that you may think he has incurred."

Counsel for the defendant excepted to this portion of the charge on the ground that "there is no evidence in this case

---

1. Undoubtedly an error in the transcript; the word should be "allow."

that these people ever had sexual relations after the conception of their last child * * * and I will ask Your Honor to instruct that they are not entitled to any damages for loss of consortium or loss of sexual relations." The trial court declined to change or modify the charge as above quoted.

We will consider first the defendant's contention that damages from loss of consortium are not within the allegations of damages in Count II of the declaration. In our opinion the general allegation in Count II that William "suffered and continues to suffer damages because of the injuries caused his wife * * *" is sufficient to cover damages from the loss of consortium. Maryland Rule 301b expressed the modern concept that "A pleading shall be brief and concise and contain only such statements of fact as may be necessary to constitute a cause of action or ground of defense * * *" Form 5(a) for declarations based on negligence in the operation of automobiles sets forth the damage claim as follows, "* * * as a result, Plaintiff suffered great pain and injury. Plaintiff claims $* * *" The allegation of damage to William in Count II is sufficient to cover all damages he suffered as a result of the injury to his wife including loss of consortium. If the defendant were in any doubt about this, he could have demanded that the plaintiffs file a bill of particulars pursuant to Maryland Rule 346 requiring that the elements of William's damages be set forth. The defendant did not do this, but filed the general issue plea, thereby indicating that the allegations in the declaration were sufficiently definite to enable him to plead. We are of the opinion that the trial court ruled properly that the allegations in Count II were sufficient to include damage resulting to William from loss of consortium. Counsel for the defendant was obviously not surprised by the claim in view of his motion in regard to evidence to support this claim filed at the first bench conference.

The defendant contends further that the trial court improperly instructed the jury that it could consider William's loss of his wife's services and loss of consortium as there was no evidence offered by the plaintiffs to establish any such losses. We do not agree. The evidence establishes that prior to the accident of June 27, 1960, Sadie was leading a relatively normal married life. William testified that "she had always been active,

* * * did all of the housework and work in the yard; sewing, ceramics * * *" Although she had suffered from high blood pressure prior to the accident "she was not hampered in doing any of the work she had always done." The great weight of the evidence indicated that as a result of the injuries caused by the accident, Sadie was permanently disabled and crippled. Her injuries caused her to become an invalid to such an extent that she was fully dependent upon William or the care of other people; she was bedridden and was unable to go to the bathroom alone.

At the time of trial, the plaintiffs had been married for over 40 years. Sadie was 59 years of age and was reasonably active. William was in his late 60's and in reasonably good health. They had had three children during their married life. There was no direct evidence that the plaintiffs had had sexual relations immediately prior to the accident, but the jury could reasonably infer from the evidence that they were enjoying such relations as persons of their age and in their circumstances would normally enjoy. Although sexual relations are a part of consortium, they by no means make up the entire right of consortium as the defendant seems to imply. Our predecessors have defined the right of consortium in *Kurdle v. Brookmeyer*, 172 Md. 246, 256, 191 A. 416 (1937). Judge Johnson, speaking for the Court, stated:

> "* * * it is generally held that the gist of the action is the loss of *consortium*, a term defined in *Bouvier, Law Dict.* (Rawle's 3rd Revision) as 'the right of the husband and wife respectively to the conjugal fellowship, company, coooperation and aid of the other.' In 2 *Cooley on Torts* (4th Ed.), it is said to include 'the husband's society, affection and aid,' and the late Judge Digges, speaking for the Court in *Miller v. Miller*, 165 Md. 425, 429, 169 A. 426, 427, said: 'The gist of this action is the loss of society, affection, assistance, and conjugal fellowship or *consortium.'* "

The trial court in submitting this issue to the jury properly defined consortium as including "the loss of her (the wife's) assistance and her society, as well as the loss of sexual rela-

tions," and there was sufficient evidence offered by the plaintiffs to have this issue submitted to the jury.

We interpret the defendant's exception to the charge on this issue as being confined to the alleged failure to allege the loss of consortium in Count II and the lack of evidence to justify the submission of the issue to the jury, rather than to include the objection that the loss of consortium, as such, is not properly an element of loss in the husband's claim for damages. Curiously enough, this latter issue has apparently never been directly passed on by this Court, and the basis for the right of recovery is a somewhat unsettled problem in our sister States. The Maryland practice to allow a husband to recover for the loss of his wife's consortium was tacitly recognized by us in *Wolf v. Frank*, 92 Md. 138, 139, 48 A. 132 (1900) wherein we said:

> "There has been but little, if any, difference of opinion as to the right of a husband to sue for what is termed 'the loss of *consortium*,' that is, the loss of his wife's society, affection and assistance * * *"

This statement, however, is *dictum;* the holding of the case was that a married woman may maintain an action in her own name against a defendant for alienation of the affections of the plaintiff's husband—(before Article 75C of the Code)—under the Married Women's Act of 1898 (Ch. 457). Similar views were expressed in *Coastal Tank Lines v. Canoles*, 207 Md. 37, 113 A. 2d 82, 86 (1955) (where we declined to overrule *Emerson v. Taylor*, 133 Md. 192, 104 A. 538, 5 A.L.R. 1045 (1918) in which our predecessors held that a *wife* could not recover for the loss of *her husband's* consortium). It was pointed out in the *Canoles* case that the recovery by the husband for the loss of his wife's consortium is predicated upon the common law concept of the husband's proprietary rights in his wife—a concept largely removed by modern legislation. This vestigial right from the earlier concept is well established in England [2] and in

2. *Mallett v. Dunn*, [1949] 2 K.B. 180, Hilbery, J., in which the basis of the action of trespass, in the nature of an action on the case, per quod consortium amisit, is analyzed. The first reported English case considering the nature of the husband's cause of ac-

a majority of our sister States [3] and it is too well entrenched in the Maryland practice to be removed at this late date. This is the rule of the American Law Inst.; see 3 Restatement of Torts, § 693 which states:

> "One who by reason of his tortious conduct is liable to a married woman for illness or other bodily harm is subject to liability to her husband for the resulting loss of her services and society, including any impair-

tion for loss of consortium seems to have been *Guy v. Livesey,* [1618] 2 Cro. Jac. 501. The right of action is recognized as a separate cause of action vested in the husband, by Sir William Blackstone in Blackstone's Commentaries (1768) Vol. III, p. 139 (See 3 Lewis' Blackstone (1922) page 1135). *Mallett v. Dunn* is cited with approval by the House of Lords in *Best v. Samuel Fox & Co., Ltd., infra,* see note 4, *infra.*

3. Barbour v. Great At. & Pac. Tea Co., 143 F. Supp. 506 (1956, E.D. Ill. construing Illinois law); Bologach v. U. S., 122 F. Supp. 502 (1954, M.D. Pa. construing Pennsylvania law); Norton v. U. S., 110 F. Supp. 94 (1953, N.D. Fla. construing Florida law); Gist v. French, 136 Cal. App. 2d 247, 288 P. 2d 1003 (1955); O'Quinn v. Central Truck Lines, Inc., 157 So. 2d 539 (1963, Fla.); Community Gas v. Williams, 87 Ga. App. 68 (1952); Stephens v. Weigel, 336 Ill. App. 36, 82 N. E. 2d 697 (1948); Burk v. Anderson, 232 Ind. 77, 109 N. E. 2d 407 (1952); Acuff v. Schmit, 248 Iowa 272, 78 N. W. 2d 480 (1956); Bowman v. American Nat. Red Cross, 39 Misc. 2d 799, 241 N. Y. S. 2d 971 (1963); Wolff v. DuPuis, 233 Or. 317, 378 P. 2d 707 (1963); Hewitt v. Pa. Rr. Co., 228 Pa. 397, 77 A. 623 (1910); Vernon v. Atlantic Coast Line Rr. Co., 218 S. C. 402, 63 S. E. 2d 53 (1951); Lindsey v. Kindt, 221 Ala. 169, 128 So. 143 (1935); Nuzzi v. U. S. Casualty Co., 121 N. J. L. 249, 1 A. 2d 890 (1938); Aderhold v. Stewart, 172 Okl. 77, 46 P. 2d 346 (1935); Guevin v. Manchester St. Rr. Co., 78 N. H. 289, 99 A. 298 (1916); *contra:* Alsop v. Eastern Air Lines, Inc., 171 F. Supp. 180 (1959, E.D. Va-construing Virginia statute eliminating husband's right to recover for loss of consortium); Rosenblatt v. U. S., 112 F. Supp. 114 (1953 N. D. N. C. construing North Carolina law), affd. 208 F. 2d 280; Rollins Beaumont-Port Arthur Bus Lines, 88 F. Supp. 908 (1950 W.Da. La., construing Louisiana law); Thornton v. First Nat. Stores, Inc., 340 Mass. 222, 163 N. E. 2d 264 (1960); Helmstetter v. Duke Power Co., 224 N. C. 821, 32 S. E. 2d 611 (1945); Bugbee v. Fowle, 277 Mich. 485, 269 N. W. 570 (1936); Marri v. Stamford St. Rr. Co., 84 Conn. 9, 78 A. 582 (1911); Clark v. Southwestern Greyhound Lines, 144 Kan. 344, 58 P. 2d 1128 (1936).

ment of her capacity for sexual intercourse, and for any reasonable expense incurred by him in providing medical treatment."

Comments b, c, and d establish that the husband's tort claim has not been extinguished by implication by the married women's property acts. According to Prosser on Torts (3d ed. 1964), §119, the "great majority of the courts" have reached this conclusion and have held that, "notwithstanding the altered status of married women, the husband may still recover substantially as at common law, with the exception that the earnings of the wife outside of the home belong to her, and hence any loss of capacity to engage in such outside work must be recovered in her own action." See annotation entitled "Husband's right to damages for loss of consortium due to personal injury to wife," 21 A.L.R. 1517, supplemented in 133 A.L.R. 1156. 27 Am. Jur. *Husband and Wife,* §502 points out that the married women's acts 1) do not deal with the remedies of the husband, 2) do not transfer the husband's right of recovery to his wife (and thereby permit a double recovery) since, at common law, such right of recovery was the husband's strictly in his own right, and not *jure uxoris.* If the defendant effectively raised the question that there is no right in the husband to recover for the loss of his wife's consortium, we hold that this, right is one for which the husband may recover. As we indicated in *Canoles,* it will not be extended or enlarged to include any right of the wife to recover for the loss of her husband's consortium as the wife had no proprietary interest in her husband at common law and an extension of this type of right is not consonant with modern concepts and policy. In declining to extend this right to the wife's recovery for loss of her husband's consortium, we followed the English law on this subject [4] and that of the majority of our sister States.[5] As indicated, however, the hus-

4. See Best v. Samuel Fox & Co., Ltd. [1952] A.C. 716 (House of Lords) affirming [1951] 2 K.B. 639 in which Lord Porter observed: "Even if it be conceded that the rights of the husband and wife ought to be equalized I agree with the Lord Chief Justice that today a husband's right of action for loss of his wife's consortium is an anomoly and see no good reason for extending it."

5. See 3 Restatement of Torts, §695 which states: "A married

band's right to recover for loss of his wife's consortium is well established in the Maryland practice as a right of action and should not be disturbed by us.

## VI.

The final point made by the defendant is that the trial court erred in declining to give a specific instruction to the jury that the plaintiffs were entitled to recover only $100 for property damage to their automobile.

The total damage to the plaintiffs' automobile was testified by Mr. Lee of the Rockmont Chevrolet to have been $227.68,

---

woman is not entitled to recover from one who, by his tortious conduct against her husband has become liable to him for illness or other bodily harm, for harm thereby caused to any of her marital interests or for any expense incurred in providing medical treatment for her husband."

See the excellent analysis of the American cases subsequent to 1950 and of the relevant law review articles in the opinion of Circuit Judge Friendly for the United States Court of Appeals for the Second Circuit in Igneri v. Cie. de Transports Oceaniques, 323 F. 2d 257 (1963 2d Cir.), especially in notes 9, 10, 11 and 12 and 15. See also the helpful analysis of the American cases prior to 1950 in the opinion of Circuit Judge Clark for the United States Court of Appeals for the District of Columbia in Hitaffer v. Argonne Co. 183 F. 2d 811 (1950), cert. den. 340 U. S. 852, 71 S. Ct. 80, 95 L. Ed. 634 (1950) especially note 5.

We rejected the *Hitaffer* rationale in the *Canoles* case, *supra*, Judge Henderson for the Court saying that "the *Hitaffer* case has not been followed by any court of last resort * * *" and that "it has universally been repudiated by courts of last resort in a number of subsequent decisions." While this statement was true when written (some 20 jurisdictions have rejected *Hitaffer*) Prosser tells us that "around 1958 something of a current of support for the *Hitaffer* case set in, and since that date the trend has been definitely in the direction of approval. It now stands accepted, and the wife is allowed her action in Arkansas, Delaware, the District of Columbia, Georgia, Illinois, Iowa, Michigan, Missouri, Montana, Nebraska, Oregon and South Dakota. Since a considerable number of the courts which have rejected the change have approved it in principle, but have said that it should be for the legislature to make, the prediction is probably justified that the trend will continue, and that public opinion as to the equality of the sexes will have its effect in persuading the courts."

which was fair and reasonable. The bill was admitted into evidence without objection.

William, however, who was recalled by counsel for the defendant toward the conclusion of the testimony, testified that he paid "the first hundred dollars" of this damage. At the conclusion of the testimony, the defendant moved that the Government Employees Insurance Company be made a party plaintiff in accordance with Maryland Rule 243 b which provides:

> "Upon petition of a defendant, the court shall order any person to be made a party plaintiff who claims the right to have all or any part of the judgment sought inure to his benefit by subrogation."

There was no sufficient evidence in the case at bar, however, that the Government Employees Insurance Company, or any insurance company for that matter, claimed any portion of the proceeds of any judgment the plaintiffs might obtain.

Counsel for the plaintiffs, prior to the instruction requested by counsel for the defendant, had requested the trial court to instruct the jury that although William had only paid $100 of the total amount of damage to the automobile, he had a right to claim the entire amount of the damage in this case. The trial court declined to give this requested instruction but indicated that counsel for the plaintiffs argue the law of the *Plank* case to the jury under his general instruction on damages. As already indicated the trial court declined to give the instruction requested by counsel for the defendant limiting recovery for damage to the automobile of the plaintiffs to $100.00. In this latter action he was clearly correct in view of our decision in *Plank v. Summers*, 203 Md. 552, 102 A. 2d 262 (1954) which cited with approval and followed *Barnes v. United Rwys. & Electric Co.*, 140 Md. 14, 116 A. 855 (1922) in which it was held that the fact that the plaintiffs' truck was insured did not disentitle the plaintiffs to maintain a suit for damages to the truck. See also *American Paving & Contracting Co. v. Davis*, 127 Md. 477, 96 A. 623 (1916) and *Chesapeake Iron Works v. Hochschild Kohn & Co.*, 119 Md. 303, 86 A. 345 (1913). In *Plank* we held that a plaintiff could recover from a tortfeasor for the value of hospital and medical services gratuitously fur-

nished to him. If any error was committed, it was in the failure to give the instruction requested by the plaintiffs, but since they have not filed a cross-appeal, there is no reversible error presented to us. The defendant on this issue had an instruction more favorable to him than he was entitled to and it may well be that the jury only took into account the $100 paid by William in connection with the automobile damage. In any event the defendant cannot complain as he has most certainly suffered no prejudice.

For the reasons stated, we find no reversible error and the judgments should be affirmed.

*Judgments affirmed, the costs to be paid by the appellant.*

Per Curiam Opinion Filed September 16, 1965

In our opinion heretofore filed we indicated that if the defendant were in doubt that damages resulting from the husband's loss of the consortium of his wife were included in the allegations in the declaration "he could have demanded that the plaintiffs file a bill of particulars pursuant to Maryland Rule 346 requiring that the elements of William's damages be set forth," and we also indicated that the defendant's failure to do this and the filing of general issue pleas indicated "that the allegations in the declaration were sufficiently definite to enable him to plead." (Page 181 of 239 Md., page 739 of 210 A. 2d)

We wish to make it clear that the above observations were made without intending any departure from the general practice heretofore prevailing, *i.e.,* that a motion for a bill of particulars is addressed to the sound discretion of the trial judge as to whether, under the attendant circumstances of the case, a demand for particulars should be granted or refused, *Hub Bel Air, Inc. v. Hirsch,* 203 Md. 637. And in exercising this discretion, the judge may give due consideration to the fact that the functions of bills of particulars have been largely superseded by the present rules relating to discovery, pre-trial conference, and summary judgment. *Hub Bel Air, Inc. v. Hirsch, supra,* wherein it was noted that motions for bills of particulars have been abolished under the Federal Rules of Civil Procedure, Rule 12(e), 28 U.S.C.A.