# Richmond

DAN RIVER MILLS, INCORPORATED v. CITY OF DANVILLE, ETC., ET AL.

March 9, 1953.

Record No. 4049.

Present, All the Justices.

The opinion states the case.

*Meade, Talbott and Tate,* for plaintiff in error.

*Rutledge C. Clement,* for defendants in error.

SMITH, J., delivered the opinion of the court.

This is an appeal by Dan River Mills, Incorporated, from a denial of its claim for relief sought in a motion for declaratory judgment which was filed to determine its license tax liability

to the city of Danville for the year 1952 and to secure a refund of license taxes paid under protest amounting to $64,720.49.

All essential facts necessary to a decision in the case were included in a stipulation agreed to by all the parties.

Dan River Mills, Incorporated, is a Virginia corporation with its principal office in Danville, where it has been engaged for many years in the manufacture of textile fabrics and yarns.[1] Defendant, city of Danville, is a municipal corporation of Virginia and co-defendant, D. B. Edwards, is its duly elected, qualified, and acting commissioner of the revenue.

In 1947 the council of the city of Danville ordained a license tax effective for the year 1948.[2] In December of 1948 this tax ordinance was amended and reenacted effective January 1, 1949, and has continued in force and effect since that time and applies to the facts in this case. The pertinent part of chapter III of the tax ordinance, namely § 9, is quoted in the margin.[3] It imposes license taxes for the privilege of conducting business in the city during the current year; the amount of the taxes being measured by the gross receipts of the taxpayer during the preceding year.

When the ordinance was first enacted in 1947, Dan River Mills and certain other concerns were doing business both within and without the city of Danville. In the case of the plaintiff its Schoolfield division was then located in Pittsylvania county. Accordingly, a proviso was written into § 9 of the ordinance to cover this situation by allowing an apportionment of gross receipts to reflect the business done within the city.

On July 1, 1951, the city of Danville annexed a portion of Pittsylvania county which included Dan River Mills' Schoolfield

---

[1] We are not concerned in this case with the plaintiff's small operation in Norfolk.

[2] We upheld the validity of this ordinance in *Langston* v. *City of Danville*, 189 Va. 603, 54 S. E. (2d) 101.

[3] "9. MANUFACTURERS, MILLS AND PROCESSORS.

For every license to engage in any of the following businesses, there shall be paid a license tax of fifteen cents (15¢) for each one hundred dollars ($100) of gross receipts, as hereinabove defined for the preceding calandar [*sic*] year, provided that if any such licensee conducts part of his business or of the processes incident thereto within and part without the city, only that fraction of the total gross receipts shall be included in the measure of license tax liability in Danville that represents the share of the business conducted within the City, the said fraction in the case of textile manufacturers to be determined by the ratio of operative payrolls for service rendered in Danville to total operative payrolls. * * *"

division so that on January 1, 1952, the Schoolfield division was wholly within the corporate limits of the city.

When the time came in 1952 for the plaintiff to pay its license tax, it contended that the gross receipts from its business conducted in Pittsylvania county from January 1 to July 1, 1951, should be excluded from the computation of its license tax for 1952. It took this stand relying on the proviso of § 9. The commissioner of revenue of the city of Danville did not agree with this position and proceeded to compute the tax on the basis of plaintiff's entire gross receipts during 1951. In order to save interest and penalties the plaintiff paid the disputed tax under protest and promptly filed its motion in this case.

The trial court denied the relief sought and in a written opinion stated its reasons for so doing, in part, as follows:

"In the view that I take of this matter, Section 9 is applicable only to such taxpayers that might be doing business partly within the City and partly outside of it during the taxable year; that is, during 1952, in this case. It should be noted that the proviso commencing a few lines down from the beginning of Section 9 says that if such licensee 'conducts part of his business—', he shall be entitled to a division of his license tax liability in accordance with the formula provided. Note the present tense. I construe that to mean that the taxpayer must be conducting his business operations in 1952 partly outside of the City and partly within it, and to have been doing that heretofore, in order for this formula to be applied. * * *"

The question thus presented for our decision is whether that portion of gross receipts for the first half of 1951, which reflects operation of the Schoolfield division (admittedly outside the corporate limits during that period of time), should be excluded from the computation of the 1952 license tax.

It is contended by the plaintiff that the term "gross receipts" is defined in the ordinance in reference to the preceding year, "Therefore," says the plaintiff, "the proviso has no meaning unless it means that the division of the taxpayer's operations is material when it exists in *the gross receipts year* and it follows that the state of affairs in the license tax year is immaterial."

Let us look to the ordinance as a whole, first to its title, then to its body.

The title states that it is "An ordinance imposing and levying license taxes for the year beginning January 1, 1949 and ending

December 31, 1949, and also for each and every year thereafter beginning with January 1 of each such year and ending with December 31 following, until otherwise changed, * * *."

Chapter I contains a number of general provisions beginning with a statement of policy; then follow definitions of words and phrases including "gross receipts" and other provisions not necessary to this discussion. Section 3 is as follows: "SUBJECT TO TAX. Each and all of the taxes hereinafter imposed are in all cases imposed upon the privilege of doing business in the city of Danville, including all phases and activities of the business, trade or occupation conducted in the City." Section 4 contains a repetition of much of the above quoted language followed by this enactment: "there are hereby levied and there shall be collected the annual license taxes * * *, on persons, * * * conducting or engaged in any businesss, trade, or occupation in the city of Danville * * *." Section 5 deals with a taxpayer who begins business on or after January 1 of the tax year and provides that the gross receipts or gross purchases shall be estimated to the end of the tax year and that any errors in the estimates are subject to correction.

The title and body of the ordinance clearly show that the purpose of the council was to impose a license tax for each calendar year for the privilege of doing business in the city during all or part of such year, so long as the ordinance is in effect.

What is the function of a proviso in a statutory enactment?

"The general rule undoubtedly is that the appropriate office of a proviso is to restrain or modify the enacting clause or preceding matter, and that a proviso to a particular section does not apply to other sections. * * *" *Norfolk & P. Traction Co.* v. *White,* 113 Va. 102, 106, 73 S. E. 467. See *City of Norfolk* v. *County of Norfolk,* this day decided, 194 Va. 716.

Dan River Mills would give to the proviso in § 9 the effect of fixing the license tax not for the current year, as provided in the whole of the ordinance, but for what it chooses to call a gross receipts year; that is, the preceding year. The proviso did no more than limit the subject of taxation to businesses, etc., in the city and it did not restrain or qualify any other sections of the ordinance. There is nothing in the ordinance to warrant the

claim that the tax year has been changed to a gross receipts year rather than the calendar year expressly specified.

The status of a licensee with reference to whether there are operations both within and without the city must be taken as of the beginning of the license tax year, which in the instant case is January 1, 1952. The word "conducts" as used in the proviso reflects the present tense, and the entire business of the plaintiff, which is subject to the computation of the license tax, was within the corporate limits of Danville on January 1, 1952. If a city licensee "conducts" a part of his operations outside the city, he does not pay a license tax on the gross receipts arising from the outside operations. On the other hand, if a city licensee "conducts" all of his operations inside the city, he is subject to a tax computed on all of his gross receipts, as defined. The word "conducts" as used in the ordinance means "conducts" at the beginning of the license tax period, which in this instance is January 1, 1952. To refer to any other time when he "conducts" than at the beginning of the license tax year would be illogical. To reach the result sought by the taxpayer herein we would have to substitute for the word "conducts," which is used in § 9, the word "conducted."

Moreover, it is conceded that for the license tax year 1951 the city did not assess any tax on any of the plaintiff's operations conducted outside the corporate limits during 1950.

In reaching this result we are not unmindful of the sound principle of law that in doubtful cases tax statutes are strictly construed against the taxing authorities and in favor of the taxpayer. No such doubt exists in the instant case.

Accordingly, the judgment of the trial court is affirmed.

*Affirmed.*

Hudgins, C. J., dissenting.

The City of Danville elected to adopt a system of license taxes to be measured by the gross receipts of businesses in respect of which the taxes are levied. The taxing ordinance defines "gross receipts" to be "the sales of merchandise and the gross receipts of the business, trade or occupation from all earnings, fees, commissions, brokerage charges and rentals, and from all income whatsoever arising from or growing out of the

conduct of the business \* \* \* *during the license tax year immediately preceding the license tax year for which the tax is being computed* \* \* \* (Emphasis added),—that is, the amount of the license tax liability for the year 1952 must be based on the total gross receipts from the business conducted during the calendar year 1951.

Section 9 of this ordinance provides that in the case of every person who is engaged in manufacturing businesses such as that engaged in by Dan River Mills, and "conducts a part of his business or of the processes incident thereto within and part without the city, *only that fraction of the total gross receipts shall be included in the measure of license tax liability in Danville that represents the share of the business conducted within the City,* the said fraction in the case of textile manufacturers to be determined by the ratio of operative payrolls for service rendered in Danville to total operative payrolls. \* \* \*." (Italics supplied)

This provision applies to "every license to engage" in business. There is no exception. Dan River Mills is a textile manufacturer and for many years prior to July 1, 1951, had conducted its business both within and without the city of Danville. That part of its business conducted within the city was known as the "Riverdale Division," and that part conducted outside of the city in the county of Pittsylvania, was known as the "Schoolfield Division." The amount of the license tax for the year 1951 was determined by ascertaining the gross receipts from the business conducted within the city in 1950. The gross receipts from the conduct of the business conducted in 1949 was the measuring rod for determining the tax liability for the year 1950. The same measuring rod was used for determining the tax liability for 1949 and 1948.

The area known as Schoolfield, in which the taxpayer conducted a part of its business, was annexed to and became a part of the City of Danville as of July 1, 1951. Thereafter the taxpayer conducted that part of its business known as "Riverside Division" and "Schoolfield Division" in the city of Danville. The taxpayer, in computing its license tax liability for the year 1952, included the gross receipts of its Riverside Division from January 1 through December 31, 1951, plus its gross receipts from the Schoolfield Division from July 1, 1951 through December 31, 1951. It did not include that part of its gross receipts from the Schoolfield Division (that part of the business

conducted out of the city), from January 1 through June 30, 1951. This computation thus included *all* of its gross receipts from its business conducted *within the city for the year 1951.*

The Commissioner of Revenue rejected the formula set forth in the ordinance for determining the amount of tax liability for the year 1952, and assessed the tax upon the gross receipts of the business conducted both within and without the city for the year 1951, thereby increasing the license tax by the sum of $64,720.49, which was paid by the taxpayer under protest.

The majority adopts the view of the trial judge who held that the provisions in the ordinance for allocation of gross receipts as between operations within and operations without the city "have no application unless the divided operations of the taxpayer occur both on January first of the license year and in the year immediately preceding." I see no significance to be attached to the date "January first" of either year, except that it is the date on which to begin to keep account of the gross receipts and the date for the beginning of the taxable year in order to determine the amount of license tax, as thus stated in the ordinance: "* * * there shall be paid a license tax of fifteen (15¢) for each one hundred dollars ($100) of gross receipts, as hereinabove defined, * * *" and "gross receipts" are "that fraction of the total gross receipts * * * that represents the share of the business conducted within the city * * * during the license tax year immediately preceding the license tax year for which the tax is being computed * * *."

It is the duty of the court to construe tax statutes or ordinances as written and not extend the same by implication.

There is no language in the ordinance declaring that allocation of gross receipts as between operations within and without the city is to be made only when this divided operation exists on January 1 of the license tax year. Neither do I find any language in the ordinance from which this conclusion is necessarily implied. The city had the power to adopt any reasonable formula for ascertaining the amount of the license tax it desired to impose. It elected to measure the license tax for the current year in all cases, except parties beginning business, by the amount of gross receipts from the business conducted within the city during the preceding year. The ordinance applies without regard to the amount of business conducted during the preceding year, whether favorable to the city or to the taxpayer

in the current or license tax year. Having selected this method of determining its license tax, the city should not be permitted to evade the standard of measurement that it has written into the ordinance by putting an unnatural and strained construction upon the language used.

Mr. Justice Eggleston, speaking for the court in *Ceroli* v. *City of Clifton Forge,* 192 Va. 118, 120, 63 S. E. 2d 781, said: "It is a well-settled and familiar principle that statutes imposing taxes are to be construed most strongly against the government and in favor of the citizen. They are not to be extended by implication beyond the clear import of the language used, and whenever there is a just doubt, that doubt should absolve the taxpayer from the burden * * *."

We said in *Williams* v. *City of Richmond,* 177 Va. 477, 14 S. E. 2d 287: "Tax laws are always to be liberally construed in favor of the taxpayer and they are not to be extended by implication * * *."

It seems to me that the majority puts a strained construction upon the taxing ordinance, and in so doing, has ignored the well established principles stated above. The truth of the matter is that the city, in adopting its taxing ordinance, failed to provide for the specific contingency that has arisen, and has failed to make an appropriate amendment to its general taxing ordinance to cover the situation. It is not within the province of this court to do what the city has failed to do and extend the tax liability by implication. There is serious doubt as to whether the ordinance is so worded as to include that part of the gross receipts from the Schoolfield Division from January 1 through June 30, 1951. In measuring the liability for the 1952 license tax, this doubt should be resolved in favor of the taxpayer and the city required to refund that part of the tax paid under protest.