## 𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v.
WILLIAM HOWARD FUTRELL, ET AL.

September 6, 1968.

Record No. 6755.

Present, Eggleston, C.J., Buchanan, Snead, I'Anson, Gordon and Harrison, JJ.

*Larry M. Topping* (*Hall and Fox*, on brief), for plaintiff in error.

*B. M. Millner; J. Warren Stephens* (*W. Glover Garner, Jr.; Robert W. Curran; Stephens & Wentworth; Marshall, Blalock, Garner & Millner*, on brief), for defendants in error.

HARRISON, J., delivered the opinion of the court.

William Howard Futrell, plaintiff, filed his motion for judgment against Robert Edward Coleman and Richard Rexsamer Baker, defendants, alleging that the negligence of the two defendants, jointly and severally, caused the plaintiff to sustain personal injuries in an automobile accident. Defendant Baker filed his grounds of defense to the motion. Defendant Coleman being an uninsured motorist, grounds of defense in his behalf were filed by State Farm Mutual Automobile Insurance Company and Fidelity and Casualty Insurance Company of New York.

Upon a trial of the case, the court granted Baker's motion to strike the plaintiff's evidence as to him and entered summary judgment in his favor. Thereafter the jury returned a verdict in favor of the plaintiff in the sum of $35,000 against Coleman, and the trial court entered judgment on the jury's verdict. We granted State Farm Mutual Automobile Insurance Company a writ of error to this final order.

The accident involved here occurred on Highway 168, a mile west of Queen's Creek Bridge in York County, about 1 P.M. on October 5, 1964. Normally this is a divided four-lane highway, but at that

time all traffic was being handled on the lanes usually reserved for eastbound traffic.

The speed limit at this point was 55 miles per hour. The road was of concrete construction. It had been raining, and a slight drizzle was occurring at the time. Futrell was driving his Ford car in a westerly direction, behind a bread truck driven by one Jack Sale. Following Futrell was a Thunderbird driven by defendant Baker.

The defendant Coleman was proceeding in an easterly direction. Evidence of eyewitnesses established that, while attempting to pass vehicles in front of him, and notwithstanding approaching vehicles, he so operated his Pontiac vehicle as to cause Sale to pull abruptly to the right to avoid a collision. Coleman then pulled further into the left and improper lane of the road and collided headon with the automobile driven by Futrell. Immediately following this impact, defendant Baker's automobile struck Futrell's vehicle in the right rear.

The speed of Coleman's vehicle was estimated by witness Herbert Russie, who was following immediately behind Coleman, at approximately 55 miles an hour, "if not a little faster". He testified that Coleman narrowly missed the bread truck before colliding with the Ford automobile driven by Futrell. Four witnesses estimated that Coleman veered into the lane in front of Futrell when the two cars were approximately 50 to 75 feet apart. The speeds of the bread truck, Futrell and Baker were variously estimated at from 45 to 55 miles an hour.

Baker was approximately 150 to 200 feet behind Futrell when he saw Coleman veer over the centerline of the road toward the Futrell car. His statement was that as soon as possible he applied his brakes and cut his car to the right side of the road; that the road was built up at that point and his car started to "crab like" with all four wheels going off the concrete; and that before it came to rest, the right front fender of his car had struck the Futrell vehicle. He estimated his speed at the time of impact at not more than 10 or 15 miles an hour. The damage to the front end of the Baker vehicle was described by him as follows: "The bumper had a dimple in it. The . . . grille was broken on the right side. The right headlight was . . . broken and the right fender was bent."

The state trooper who investigated the accident described the damage done the Futrell vehicle by the Baker car as " . . . a slight dent or marking on the right rear bumper". He said that the Baker

vehicle sustained damage to its right front headlight, hood and fender.

Coleman remembers nothing about the accident.

As the result of the impact, the Coleman and Futrell vehicles were described as "totally damaged". The front end of the Futrell car was "accordioned" into the driver's compartment.

State Farm petitions us to reverse the judgment against Coleman and makes 15 assignments of error.

First it complains that the trial court erred in refusing to sustain Coleman's motions to strike the plaintiff's evidence. From this evidence it could be found that plaintiff was traveling at approximately 45 miles an hour, on his right and proper side of the highway, when defendant Coleman approached from the opposite direction at a speed faster than 55 miles an hour, crossed over the dividing line of the highway when he was about 50 feet in front of plaintiff, and thereupon crashed headon into plaintiff's vehicle.

The court correctly instructed the jury that Coleman was negligent as a matter of law in the operation of his automobile. It further told the jury that if it believed that such negligence was a proximate cause of the collision it should find for the plaintiff, unless Futrell was himself guilty of contributory negligence. It is unnecessary for us to discuss here whether or not there was sufficient evidence of contributory negligence on the part of the plaintiff to have warranted the giving of that phase of the instruction. The trial judge submitted the question to the jury, and its verdict in favor of plaintiff is binding on us.

It is argued that the trial court erred in striking plaintiff's evidence as to Baker and in entering summary judgment in his favor. The testimony is that immediately prior to the accident, defendant Baker was operating his car at a reasonable speed, within the proper lane of travel, and a reasonable distance behind Futrell. The act which precipitated the accident was the negligence of Coleman in pulling left into the improper lane, and in the face of approaching vehicles, thereby forcing the bakery truck to veer to its right and requiring Futrell to brake his vehicle suddenly in an effort to avoid a collision. Baker was confronted with an emergency not of his making.

There is no evidence here that establishes, or from which it can be reasonably inferred, that any of the injuries sustained by Futrell were occasioned by reason of the impact of the Baker vehicle. The most that can be said is that following the violent collision of the Coleman and Futrell vehicles, there was some contact between

Futrell's car and Baker's car. The burden was on the plaintiff to show that the negligence of Baker proximately caused or contributed to cause his injuries, or that such injuries resulted in part from the negligence of Baker as well as the negligence of Coleman. To have submitted this issue to the jury would have invited its speculation with respect to whether Futrell's injuries were caused to any degree by the impact between the Baker and Futrell vehicles.

Complaint is made that the verdict is excessive and shocking to the conscience of fair-minded men. As a result of the accident, Futrell was hospitalized from October 5, 1964 until November 6, 1964. Subsequently, he was admitted to Riverside Hospital for a heart condition, which his physician relates to the accident, and remained a patient there from February 19, 1965 to February 27, 1965. His injuries consisted of multiple lacerations, disfiguring facial lacerations involving his upper lip, a fractured nose and nasal injuries, a fracture of the right heel bone, a fracture of the left fibula, a mild cerebral concussion and numerous bruises. Approximately 300 stitches were necessary to close the lacerations he suffered. Facial surgery was performed. A closed reduction was done to the right heel bone and cast applied. The attending physician estimated that Futrell received a 25% permanent impairment in the function of his left leg due to the heel injury. A plastic surgeon performed an operation to correct a deviated septum and cartilage resulting from a blow to the side of Futrell's face which caused an obstruction in his respiration. Plaintiff will have a "hump" in his nose as a result of the injury and operation. Medical expenses incurred by Futrell approximate $2,000. Mr. Futrell was unable to work from October 5, 1964 through June 19, 1965, and there is evidence that he is not as efficient, alert or productive as he was prior to the accident.

It suffices to say that there is abundant evidence in the record that plaintiff has suffered severe, painful and permanent injuries—some of a disfiguring character. His out-of-pocket expenses have been considerable, and the jury could have found that his earning capacity has been curtailed. The jury concluded that an award of $35,000 was fair and reasonable, and its verdict has the full approval of the trial judge. We find nothing in the record to show that the award is excessive or was not fairly reached, and therefore it should not be disturbed. *Edmiston* v. *Kupsenel*, 205 Va. 198, 135 S. E. 2d 777 (1964); *Hardy* v. *Greene*, 207 Va. 81, 147 S. E. 2d 719 (1966); *Davenport* v. *Aldrich*, 207 Va. 271, 148 S. E. 2d 768 (1966).

■ The introduction of a photograph published in a newspaper of the Coleman and Futrell vehicles, taken at the scene of the accident and reflecting their wrecked condition, is made the subject of an assignment of error. Virginia State Trooper Waters identified the picture and said it "actually portrayed the conditions as he recalled them". Having been properly authenticated by a qualified witness as a correct representation and reproduction of the object which it portrayed, its admission in evidence was unobjectionable. *Lawson* v. *Darter*, 157 Va. 284, 160 S. E. 74 (1931); 32 C. J. S., Evidence, § 715, p. 1014.

■ State Farm objects to so much of the instruction given the plaintiff on damages as concerns his loss or lessening of earning capacity. The record shows that Futrell was either in the hospital, or recuperating from his injuries, and away from his job, for several months as a direct result of the accident, and that he sustained a 25% disability of his left leg. The evidence is sufficient for the jury to have found that by reason of these injuries the plaintiff had lost a portion of his earning capacity, and that he will sustain a further loss or lessening of earning capacity in the future.

Over objection the trial court gave an instruction which included this language: "[I]f the jury believe from a preponderance of the evidence that the plaintiff, at the time of the accident, was not in good health or if he was suffering from a pre-existing disability, and that this condition, if any, re-occurred as the result of this accident, then, if he is entitled to recover in this action, he may recover for such re-occurrence resulting from the accident, but not for any pre-existing disability."

The evidence adduced was that Futrell had suffered a heart attack in 1961. In February 1965 he suffered another attack. Dr. E. L. Alexander, who was Futrell's attending physician, testified that in his opinion the automobile accident in which Futrell was involved in October 1964 directly contributed to the re-occurrence of his heart failure of February 1965. Under the circumstances of this case, it was not error for the instruction to have been given. *Watford* v. *Morse*, 202 Va. 605, 118 S. E. 2d 681 (1961).

■ The defendant assigns error to a hypothetical question propounded Dr. Alexander regarding plaintiff's heart condition, and to the action of the trial court in assisting counsel for the plaintiff in framing it. The information, ultimately elicited from the physician by this question, could have been obtained by direct inquiry and

answer, for the doctor had personal knowledge of plaintiff's medical history, injuries and condition. Such a question was unnecessary but harmless. *Lawson* v. *Darter, supra.*

The objection now made to the action of the trial court in permitting counsel for the plaintiff to read to the jury from Virginia Code Section 8-263.1 (1966 Cum. Supp.), it being the table of life expectancy, does not appear to have been voiced in the court below. While this method of introducing the life expectancy table in evidence is unusual, and not an approved procedure, it does not here constitute reversible error.

■ The casual, unsolicited and irrelevant mention by a witness of the word "insurance" during the course of his testimony was not error under the circumstances of the case. *Simmons* v. *Boyd,* 199 Va. 806, 102 S. E. 2d 292 (1958). In any event, it was cured by the court instructing the jury to disregard it.

Exception was taken to the failure of the trial court to grant a mistrial upon discovering that plaintiff's counsel had left some written notes in the jury room during the course of the trial. It developed that one of the attorneys for the plaintiff had written suggestions for his co-counsel to use in arguing before the jury. The papers were left in the jury room inadvertently. When objection was voiced, the court polled the jury and determined that no juror had read the notes or knew their contents. Manifestly it was not error for the court to have refused to grant a mistrial on this ground.

While this court has disapproved the mentioning of the amount sued for in a damage instruction, it obviously is proper for the jury to know the amount that the plaintiff claims he is entitled to be awarded. We have previously dealt with this matter in *Phillips* v. *Fulghum,* 203 Va. 543, 125 S. E. 2d 835 (1962). There is nothing in this case to show any prejudice to the defendant, as State Farm claims, by reason of references by plaintiff's counsel to the amount sued for, or by his reference to the amount of damages which he argued to the jury should be awarded his client.

■ Error is assigned to the action of the trial court in refusing to declare a mistrial when counsel for the plaintiff, during his argument to the jury, said:

"So—that is the picture of the man and this is something that— that your duty is to compensate him for, to go in and to look at

each of these injuries, to determine if it happened to you, what compensation, what verdict you would want if the same thing happened to you."

The impropriety of the golden rule argument has been referred to in numerous decisions by this court. *Seymour, et al.* v. *Richardson*, 194 Va. 709, 75 S. E. 2d 77 (1953); *Phillips* v. *Fulghum, supra; Cape Charles Flying Service* v. *Nottingham,* 187 Va. 444, 47 S. E. 2d 540 (1948); *Crosswhite* v. *Barnes,* 139 Va. 471, 124 S. E. 242 (1924). However, here objection was made to counsel's statement, and the trial court admonished the jury as follows:

"Gentlemen, counsel made reference in the argument to a statement of what you would give if this happened to you. Of course, gentlemen, if you decide that the plaintiff is entitled to recover, in fixing the damages, this should be an objective determination and not considering that it happened to you but this should be an objective, fair determination, considering both the rights of the defendant and rights of the plaintiff and not to be viewed from the standpoint of you having sustained the particular loss because none of us generally judge our own cases fairly."

We hold the refusal of the trial court to declare a mistrial was proper.

During the trial below, a motion was made by counsel for all parties that the court declare a mistrial because of the alleged misconduct of a juror and certain witnesses. This was also made the basis of an assignment of error. It developed that at the noon-hour recess a Mr. Victor, who had been summoned as a witness by the defendant Baker, recognized one of the members of the jury as a friend. At that time this juror was in the jury room with other members of the jury, and the door was open. Victor is reported to have jokingly said to the juror: "I thought you had to be of good character to be a juror." One witness said that Victor and the juror "kind of hollered across to each other". Later on the juror walked over to where Victor and others were standing, and they engaged in conversation. The juror and Victor were both motorcycle enthusiasts and discussed motorcycles and otherwise passed the time of day. The juror asked Victor what he was doing there, and Victor re-

sponded that he was a witness and that he was there because he had bought the car that had been involved in the accident.

Following the motion for a mistrial, the trial court and counsel examined in detail the juror and witnesses who had been involved. It is obvious from the testimony given that the exchange between them was a casual one, inadvertently done, and with no intent to violate the court's admonition that the jurors not discuss the case with anyone outside the panel. The trial court held, and properly so, that the friendly inquiry by the juror of his friend as to the reason for his presence in court was not a "discussion" of the case. As was observed, the juror was bound to have found out sooner or later that his friend was a witness. It is noted that the witness in question was summoned by Baker and was never used. The trial judge treated the occurrence as an insignificant one and denied the motion for a mistrial. This was a matter resting in his sound discretion, and there is nothing here to show that he abused that discretion, or that any one has been prejudiced thereby.

Upon careful consideration, we find no merit in any of the defendant's assignments of error with respect to the lower court's rulings on the instructions, and, on the whole, no error in the rulings of the lower court. Accordingly, the judgment is

*Affirmed.*