# Richmond

## NORFOLK AND WESTERN RAILWAY COMPANY v. GEORGE W. KEATLEY.

January 18, 1971.

Record No. 7267.

Present, Snead, C.J., I'Anson, Gordon, Harrison, Cochran and Harman, JJ.

*Thomas R. McNamara; Kenneth H. Lambert, Jr. (Ralph E. Lawrence; Williams, Worrell, Kelly & Worthington, on brief), for plaintiff in error.*

*Willard J. Moody; Raymond H. Strople (Moody, McMurran and Miller, on brief), for defendant in error.*

GORDON, J., delivered the opinion of the court.

Plaintiff George W. Keatley, an employee of Norfolk and Western Railway Company, brought this action against the Railroad to recover for personal injuries sustained in an accident. He based his action on the Federal Employers' Liability Act, 45 U.S.C. §§ 51—60 (1964), and on the Federal Safety Appliance Act, 45 U.S.C. §§ 1—43 (1964). The court submitted the case to the jury under both Acts, the jury returned a $35,000 verdict for Keatley and the court entered judgment on the verdict. This appeal by the Railroad ensued.

Keatley, a brakeman, was injured while riding in the lead engine of a 40-car freight train in the Portlock Yards in Norfolk. Before the train entered a storage track, the conductor and the engineer agreed that when the train had cleared the main track, the conductor, instead of signaling this fact to the engineer, would stop the train by turning an "angle cock" on the back of the last car. (An "angle cock" is a hand-operated release valve on the main air brake system.) There was evidence that the conductor turned the angle cock in a manner that would normally have caused the train to stop slowly if the brakes functioned properly. Nevertheless, the lead engine came to a sudden stop. The engineer "[had] never seen one stop that quick in an emergency"; Keatley said "it was like running into a brick wall". The sudden stop threw Keatley forward, causing the injuries complained of.

A safety rule of the Railroad forbade employees "from using the angle cock on the ends of cars to control the movement of locomotive and cars except where it is absolutely necessary". The Railroad concedes that the evidence was sufficient to support findings that the Railroad through its employees violated this rule and that Keatley was injured as a result of the violation. So it concedes the sufficiency of the evidence to support a finding of negligence, which is necessary for recovery under the Employers' Liability Act.

The Railroad contends, however, that since no defect in the braking system was shown, Keatley did not bring his case within

the Safety Appliance Act. It therefore contends that the trial court erred in permitting the jury to return a verdict under that Act.[1]

Unlike the Employers' Liability Act, which imposes liability for negligence, the Safety Appliance Act imposes absolute liability upon proof of defective or inefficient safety equipment. *Myers* v. *Reading Co.*, 331 U.S. 477, 67 S. Ct. 1334, 91 L.Ed. 1615 (1947); *St. Louis, I.M. & S. Ry.* v. *Taylor*, 210 U.S. 281, 28 S.Ct. 616, 52 L.Ed. 1061 (1908). Keatley's counsel contends that whether or not there was direct proof of a defect in the braking system, inefficiency of the system was inferentially established by the evidence that it did not function properly when the conductor opened the angle cock with due care and in the normal, natural and usual manner. He relies on the rule that "inefficiency may be established by showing a failure to function, when operated with due care, in the normal, natural and usual manner". *Myers* v. *Reading Co.*, supra at 483, 67 S. Ct. at 1338, 91 L.Ed. at 1619.

Counsel for the Railroad does not challenge the manner in which the conductor opened the angle cock. He contends, however, that the *Myers* rule is inapplicable because the evidence showed that a train is normally, naturally and usually stopped by applying the brakes from the engine, not by opening an angle cock.

The Railroad's contention is satisfactorily answered by the court's opinion in *Richmond, F. & P. R.R.* v. *Brooks*, 197 F.2d 404, 407-08 (D.C. Cir.), *cert. denied*, 344 U.S. 828, 73 S.Ct. 31 97 L.Ed 644 (1952):

> "The [Safety Appliance] Act contemplates a system of power control emanating from the engine. It is there the power is generated and the engineer functions. Pressure is built up in the brake system through control exerted by the engineer in the engine. He can manipulate this pressure to regulate the speed of the train and obviate the danger and uncertainty of control by hand brakes. But if, as a part of such a power system the appliances actually installed, as in this case, place control also in the conductor, efficient functioning remains essential. Delegation of partial control to the conductor does not avail to permit inefficient operation of the appliances when control is actually exercised by the conductor."

In *Brooks*, a conductor opened a valve attached to the rear of the

---

[1] Since the jury returned a general verdict, it is not known whether the verdict was based on the Safety Appliance Act.

caboose, the train came to a "rough stop", and the plaintiff was thrown to the floor and injured. The railroad in *Brooks* contended "that since the train-brake system admittedly consisted of equipment which in and of itself complied with the statute [the Safety Appliance Act] it was error to permit the jury to find non-compliance due to its alleged defective functioning when the conductor, rather than the engineer, brought the system into play." *Id.* at 407. Rejecting that contention, the court held: "There was evidence from which the jury could find that the system failed to function properly when the conductor, without negligence on his part, brought it into operation in a manner usual and customary to the exercise of control by him, and that such failure was a proximate cause of the injuries." *Id.* at 408.

Similarly, we hold that the court properly submitted this case to the jury under the Safety Appliance Act, as well as under the Employers' Liability Act.

The other questions raised by the Railroad involve opinion evidence, instructions given and refused, argument of Keatley's counsel and the amount of the verdict.

■ On direct examination by Keatley's counsel, the conductor was asked to express an opinion why the train stopped suddenly after he had opened the angle cock slowly. Without objection from counsel for the Railroad, he answered in effect that a bad triple valve could cause the train to stop suddenly. Over objection of counsel for the Railroad, the engineer was permitted to express substantially the same opinion. In his subsequent testimony, the engineer admitted that he knew little if anything about train braking systems in general or triple valves in particular.

Counsel for the Railroad complains of the admission of the conductor's and engineer's opinion evidence. Since the conductor's opinion was admitted without objection and cannot be complained of now, we will consider only the objection to the engineer's opinion evidence.

A trial court has wide discretion respecting the admission of opinion evidence. *Richmond Locomotive Works v. Ford*, 94 Va. 627, 641, 27 S.E. 509, 510-11 (1897). Initially, the trial court did not abuse its discretion in concluding that an experienced engineer was competent to express an opinion why the train stopped suddenly. When the engineer subsequently disclaimed any expertise on the subject, counsel for the Railroad did not ask the court to instruct the jury to disregard the engineer's opinion. Perhaps counsel realistically

recognized that in view of the disclaimer, a jury could not reasonably be influenced by the engineer's opinion.

In any event, since the conductor had already expressed the same opinion, the engineer's opinion was merely cumulative and its admission did not constitute reversible error. *See Norfolk and Western Ry. v. Henderson*, 132 Va. 297, 308, 111 S.E. 277, 281 (1922).

The Railroad complains of several instructions granted and several instructions refused by the trial court. Upon examining these instructions, we conclude that the jury was fairly and fully instructed.

■ During his closing argument, Keatley's counsel invited the jurors to ask themselves if the pain suffered by Keatley wasn't "worth something", to ask themselves how much they would pay a doctor to relieve themselves from pain for one hour. When counsel for the Railroad objected to that argument, the court responded, "I think that's in the province of the jury to determine based upon the instructions".

We agree with counsel for the Railroad that Keatley's counsel crossed over the line into improper argument. *See State Farm Ins. Co. v. Futrell*, 209 Va. 266, 273, 163 S.E.2d 181, 186 (1968). But counsel for the Railroad was apparently satisfied with the court's response to his objection; he did not move for a mistrial or for an instruction that the jury disregard the improper argument.

■ Finally, counsel for the Railroad contends that the jury verdict of $35,000, the amount sued for, was excessive. There was evidence that Keatley suffered a sprain of the trapezius muscles and ligaments and a subluxated vertebra, that at the time of the trial (about three years later) Keatley was still suffering and under treatment, and that he would experience permanent periodic discomfort from the injury. Since reasonable men might conclude that $35,000 is just compensation for such injuries, we will not disturb the verdict.

*Affirmed.*