867 F.2d 609
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Helen Dubaich LIFMANN, Plaintiff-Appellee,
v.
CARLSON COMPANIES, INC.; Carlson Marketing Group, Inc.,
Defendants-Appellants.
Helen Dubaich LIFMANN, Plaintiff-Appellant,
v.
CARLSON COMPANIES, INC.; Carlson Marketing Group, Inc.,
Defendants-Appellees.
 Nos. 88-3901, 88-3923.
 United States Court of Appeals, Fourth Circuit.
 Argued: Nov. 4, 1988.
Decided: Jan. 11, 1989.
 
 Anthony John Trenga (Grady C. Frank, Jr., Ronald L. Lord, Hazel, Thomas, Fiske, Beckhorn & Hanes, P.C., on brief), for appellants.
 Elaine Charlson Bredehoft (Dana Stansell Hecht, Walton & Adams, P.C., on brief), for appellee.
 Before ERVIN, Circuit Judge, BUTZNER, Senior Circuit Judge, and JACKSON L. KISER, United States District Judge for the Western District of Virginia, sitting by designation.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 The defendants, Carlson Companies, Inc., and its wholly-owned subsidiary, Carlson Marketing Group, Inc. (Carlson), appeal from a judgment entered on the verdict of a jury in favor of Helen Dubaich Lifmann. Carlson assigns error to the district court's denial of its motion for a judgment notwithstanding the verdict, or in the alternative, for a new trial. It also assigns error to the grant of a directed verdict in favor of Lifmann on counts IV and V of its counterclaim. Lifmann cross-appeals from the district court's judgment entering a directed verdict in favor of Carlson on counts III and IV of her second amended complaint. We affirm.
 
 
 2
 * Lifmann was vice president of sales for a group travel agency which Carlson bought in 1984. In anticipation of the sale, the travel agency entered into a five-year employment agreement with Lifmann which allowed termination of Lifmann only for certain specified reasons. The agreement provided for deferred compensation of $15,000 per year into funds designated by Lifmann. The agreement also contained a covenant not to compete.
 
 
 3
 Following Carlson's purchase of Lifmann's employer, relations between Lifmann and Carlson deteriorated. Lifmann objected to several of Carlson's management decisions because she believed they hampered her ability to do her job. She also registered many complaints about her work environment. Lifmann's complaints continued over a six-month period, and the parties were unable to reach any mutually satisfactory solutions. The tensions culminated in an altercation between Lifmann and her immediate supervisor, and at that point Lifmann quit or was fired, depending upon which party's story is believed. Lifmann immediately accepted a job with another group travel agency.
 
 
 4
 In a multicount complaint, Lifmann alleged that Carlson breached her employment contract and that Carlson Companies conspired with Carlson Management Group to induce the breach and to cover up the breach. Carlson counterclaimed that Lifmann breached her employment agreement by quitting and by violating the covenant not to compete.
 
 
 5
 The jury returned a verdict in favor of Lifmann on her breach of contract claim and awarded her $190,000 in damages.
 
 II
 
 6
 The question to be resolved in deciding a motion for judgment notwithstanding the verdict is whether there is evidence upon which a jury can properly find a verdict. Ralston Purina Co. v. Edmunds, 241 F.2d 164, 167 (4th Cir.1957). In determining whether the evidence is sufficient the court is not free to weigh the evidence or to pass on the credibility of witnesses or to substitute its judgment of the facts for that of the jury. 9 Wright & Miller, Federal Practice & Procedure Sec. 2524 at 543-45 (1971). The nonmoving party must be given the benefit of every legitimate inference in its favor. Mays v. Pioneer Lumber Corp., 502 F.2d 106, 107 (4th Cir.1974). Tested by these familiar precepts, the jury's verdict, which was accepted by the district court, should be sustained.
 
 
 7
 Carlson seeks to retry before this court the issue of whether Lifmann quit or was fired. There was evidence before the jury supporting both Carlson's and Lifmann's version of what occurred on Lifmann's last day of work. Lifmann and her secretary, who was fired shortly after Lifmann left work, testified that Lifmann was fired. Lifmann introduced substantial documentary evidence from which the jury could reasonably have inferred that Carlson was seeking a way to rid itself of Lifmann. The district court committed no error in refusing to enter judgment notwithstanding the verdict in favor of Carlson.
 
 III
 
 8
 Carlson argues that the district court abused its discretion in failing to set aside the jury's verdict and grant a new trial. Carlson asserts several grounds upon which the district court should have granted a new trial, the first being that the jury's award of $190,000 in damages was unsupported by the evidence.
 
 
 9
 At the outset, we observe that a trial court may set aside a verdict and grant a new trial if it believes that the verdict is against the clear weight of the evidence or is based on false evidence or will result in injustice. Aetna Casualty & Surety Co. v. Yeatts, 122 F.2d 350, 352-53 (4th Cir.1941). Whether the court grants or denies a motion for a new trial rests in its sound discretion. Its decision is "unreviewable upon appeal, save in the most exceptional circumstances." 122 F.2d at 354. In Klein v. Sears Roebuck and Co., 773 F.2d 1421, 1428 (4th Cir.1985), we reiterated:
 
 
 10
 A trial court in its discretion may set aside a verdict and grant a new trial if the "verdict is so excessive that it cannot be justified by anything in the record or of which the Court can take judicial notice[.]" Our review of the trial court's decision, however, "is limited to ascertaining whether the decision amounts to an abuse of discretion." (citations omitted).
 
 
 11
 Lifmann presented evidence supporting her claim for compensatory damages based on loss of salary, deferred compensation, and commissions stemming from Carlson's breach of her employment contract. There is no substantial controversy over the amount of lost salary. The parties disagree on the amount due her under the deferred compensation agreement. Carlson asserts that the terms of the agreement allowed Lifmann to recover $2,089. Lifmann contends that the same terms permitted her to recover $83,612. The terms of the deferred compensation agreement are at best ambiguous, and where a contract is susceptible to different interpretations and it is necessary to refer to testimony of witnesses, the construction of the contract is for the jury. Combs v. Dickenson-Wise Medical Group, 223 Va. 177, 184, 355 S.E.2d 553, 557 (1987). It was therefore within the province of the jury to interpret the terms of the contract in favor of Lifmann.
 
 
 12
 Carlson also attacks the jury's verdict on the ground that it improperly considered speculative testimony concerning lost future commissions. Carlson's witness, James P. Pfleider, president of Carlson Marketing Group, testified that Lifmann's experience, connections, and background "clearly" rendered her capable of doing nine or ten million dollars in sales per year. In Mullen v. Brantley, 213 Va. 765, 195 S.E.2d 696 (1973), the Supreme Court of Virginia held that lost profits may be recovered where there is an established business with an established earning capacity. 213 Va. at 768-69, 195 S.E.2d at 699-700. Mr. Pfleider testified that Lifmann had an established earning capacity in an established business. Carlson, of course, could not discredit its own witness's testimony as speculative, and its counsel did not address the testimony in closing argument. Whether Carlson prevented Lifmann from earning commissions by impeding her work and ultimately discharging her presented a question for the jury. Also, the district court properly submitted to the jury the issue concerning the amount Lifmann would have earned but for Carlson's action.
 
 
 13
 Carlson also contends that Lifmann had a duty to mitigate her damages by returning to work for Carlson. At Carlson's request, the trial court gave an instruction on mitigation of damages. The jury apparently found that Lifmann had no obligation to return to work for Carlson. The district court did not err by refusing to disturb that finding.
 
 IV
 
 14
 Carlson also asserts that a new trial should be granted because Lifmann's counsel made improper arguments in her summation. The court properly overruled objections made to some of the arguments. Carlson failed to object to other parts of the argument that it now asserts were improper. Carlson therefore waived its right to challenge those arguments, and it is precluded from raising them here. Carlson's assertion that the contemporaneous objection rule does not apply in this case is untenable. Carlson cites our decisions in Leathers v. General Motors Corp., 546 F.2d 1083 (4th Cir.1983), and Werner v. Upjohn Co., 628 F.2d 848 (4th Cir.1980), where we excused the parties' failure to timely object because, among other things, the improper arguments flagrantly violated established rules. There was no such flagrant violation here.
 
 V
 
 15
 Similarly, there is no merit to Carlson's contention that the district court erred in admitting testimony concerning Lifmann's treatment at her deposition and Carlson's termination of Lifmann's secretary. The district court properly instructed the jury to disregard prejudicial statements made by Lifmann about events transpiring at her deposition. Evidence concerning termination of Lifmann's secretary was germane to the issue of whether Lifmann resigned or was fired. We find no merit in Carlson's other assignments of error about the court's evidentiary rulings and its instructions.
 
 VI
 
 16
 Carlson also contends that the district court should not have entered a directed verdict dismissing counts IV and V of Carlson's counterclaim. Counts IV and V alleged that Lifmann breached the covenant not to compete by accepting a job with another group travel agency. The district court held that the covenant not to compete is unenforceable because it is too broad and unreasonable.
 
 
 17
 We find no error in the district court's ruling. Mr. Pfleider, president of Carlson Management Group, testified about the substantial number of businesses in which Carlson is engaged. The terms of the covenant in Lifmann's contract precluded her from becoming employed not only in the travel business but in any business in which Carlson was involved. The effect of the clause was to prohibit Lifmann from securing a livelihood throughout most of the United States for a period of five years. Consistent with our decision in Grant v. Carotek, 737 F.2d 410 (4th Cir.1984), the district court properly held that the covenant not to compete was unenforceable.
 
 VII
 
 18
 In Lifmann's cross-appeal, she assigns error to the district court's dismissal of counts III and IV of her complaint which alleged conspiracies to induce a breach of contract and to cover up an illegal act. Lifmann claimed that Carlson Companies conspired with its wholly-owned subsidiary, Carlson Management Group.
 
 
 19
 The district court properly held that employees of a parent corporation and employees of a wholly-owned subsidiary are incapable as a matter of law of forming a conspiracy. See Copperweld Corp. v. Independent Tube Corp., 467 U.S. 752 (1984); Ray Dobbins Lincoln Mercury, Inc. v. Ford Motor Co., 604 F.Supp. 203 (W.D.Va.1984), aff'd, 813 F.2d 402 (4th Cir.1985) (table). There is no evidence to support Lifmann's assertion that her supervisor acted outside the scope of his authority and was therefore an outside party to the conspiracy.
 
 
 20
 AFFIRMED.